228 N.J. Super. 541 (1988)
550 A.2d 512
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NED M. HICKS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1988.
Decided November 16, 1988.
*543 Before Judges PRESSLER, O'BRIEN and STERN.
Catherine M. Langlois argued the cause for appellant.
James J. Janci, Assistant Warren County Prosecutor, argued the cause for respondent (Richard C. Hare, Warren County Prosecutor, attorney; James J. Janci on the brief).
The opinion of the court was delivered by STERN, J.A.D.
N.J.S.A. 39:4-50.2 requires the operator of a motor vehicle to give his consent to the taking of a breathalyzer examination upon arrest for driving under the influence of an intoxicating liquor (DWI), N.J.S.A. 39:4-50(a).[1] A provision of that statute, N.J.S.A. 39:4-50.2(c), provides:
In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.
The issue before us is whether an individual arrested for a DWI offense, N.J.S.A. 39:4-50(a), and subjected to a breathalyzer *544 examination upon direction of the police is entitled to have the results of that examination suppressed when the police refuse his request to make a telephone call which might assist in obtaining the independent test permitted under N.J.S.A. 39:4-50.2(c).
Defendant was found guilty in the Mansfield Township Municipal Court of DWI. A $250 fine, $100 surcharge, and $15 court costs were imposed. Defendant was ordered to attend the alcohol countermeasures program, and his license was suspended for six months. Defendant was again found guilty on trial de novo before the Law Division, Warren County, and the same sentence was imposed.[2]
Defendant was arrested following his involvement in a minor two-vehicle collision at approximately 11:40 p.m. on October 16, 1987. Defendant represented himself at the municipal court trial and at the outset stated the following:
Your Honor, I'd like to, I'd like to make a motion that ah, that the charge of D.W.I. be dismissed for ah, because the officer would not allow me to make a phone call, or explain to me, exactly how I could ah, ah, have a counter get my blood tested, in order that the breath analyzer be ah, disposed of. Ah now, I understand that I, there is no way that I could ah, I can't just walk into the hospital and get a blood test, I have to contact a physician, who has to order the blood test and ah, I was not allowed to contact my wife, or a lawyer, when I repeatedly asked to do so, because I don't, I'm not aware, I don't get involved with these matters. Ah, ya know, I'm a business man, and these sort of things do not, I do not get involved with these; and so I'm asking that the Court dismiss these charges, on the ground that I did not have an opportunity to exercise my constitutional rights.
The court denied defendant's motion stating:
And the Court is going to deny your motion Mr. Hicks. Ah, whether you, well you may claim anything that you wish to claim, but ah, that according to the statutes of New Jersey, anyone must submit to a breathalizer test, and obviously I will hear testimony from the ah officers involved, as to whether you were advised of your rights, or you were not. But as far as you making a telephone call, before submitting to a test, or having your attorney present, or your doctor present, or your wife present, or anyone else present, the law *545 specifically states that no one is entitled to have anyone present, before the breathalyzer is, test is administered, ah.
When defendant indicated that the court was not ruling on "the content" of his motion, the court further ruled that defendant did not have the right to have a witness present during the administration of a breathalyzer examination and that "... now if they didn't advise you that you have the right to see a doctor and have a blood or a urine sample taken ... and so forth and so on, ... I'll reserve on that part of the motion until I've heard the State's proofs." However, there was no contest that defendant was, in fact, given the appropriate advice under N.J.S.A. 39:4-50.2(d) that he was entitled to be furnished with a copy of the results of the breathalyzer examination given by the State, and that he had a right to an independent examination. See N.J.S.A. 39:4-50.2(b), (c).
The proofs indicated that upon responding to the accident, Patrolman Pantuso detected an odor of alcohol on defendant's breath and that defendant was argumentative and loud. The officer also indicated that defendant could not properly perform "the finger to nose test, and the heel to toe test." At the Mansfield Township Police Headquarters, the breathalyzer rights form was read to defendant and two examinations were administered. The exams, conducted at 1:00 a.m. and 1:06 a.m. on October 17, 1987, both resulted in readings of .12%.
On cross-examination, Officer Pantuso admitted that defendant asked but was denied the opportunity to make a telephone call from his car telephone at the scene of the accident, and that the officer advised defendant at police headquarters of his right to obtain an independent examination. In the words of Pantuso, "I didn't explain how you could go, but I explained that you could have it done, once you took the breath test."
Defendant testified on his own behalf. He indicated that "... I always insist on making a phone call" because he didn't want his wife to fear any reason related to his delay. He stated "... I asked him to make the phone call then ... because ah me and my wife have a standing arrangement that *546 anything that we ah, that I'm picked up by the police, or she's picked up by the police, that we make an immediate phone call to one another, so that we know where the other person is...." Defendant explained that because other members of his minority group had been "beaten on the highway," he had made this arrangement with his wife so that she would not be concerned when he arrived home late. Defendant further testified:
... I insisted on making the phone call to my wife, or my attorney, so that I would know, ah, so that she would know exactly where I am. Now, I don't know anything about ah, ah, how I could go about getting a blood test, or a urine test, except the patrolman did tell me that, he told me that, but being arrested, being arrested for me, is not, is ah, I interpret this is that I don't have the freedom, enough to ah, ah, to get these tests done. In other words, I cannot walk into the hospital, call up a hospital or something and say, I'd like to get a blood test, I'd like to get a urine test; I have to have someone on the outside, that's going to make these contacts for me; that is to call my physician who lives down the street from me; ah, call my lawyer, my regular lawyer, who lives in Orange; ah, now so, these are the things, that I'm saying that were denied to me, and I think that ah, ah, I think it was a fraudulent arrest, because, I was simply denied, or not advised of how I could go about getting my constitutional rights fulfilled.
In his summation to the municipal court judge, defendant insisted that the refusal of the officer to permit him to make the telephone call was a total "inhibition of my rights." He said, "It doesn't do him any good to tell me those things, if I can't make the phone call, to someone on the outside ... to make arrangements for [the independent blood test] ... I'm sitting there wondering now how am I going to get an independent test, when here I am, I'm under arrest, and I can't make a phone call, so it nullifies everything that he tells me, right there...." Although not part of his testimony under oath, defendant also indicated to the court that after he was released by the Manchester Township Police Department, he was taken to meet another police officer in Warren County who took him to the edge of Chester where he was greeted and taken home by the Chester Police. Without development under oath of the length of time involved, it appears that this took some period.
The municipal judge found defendant guilty and used the two readings of .12 in making his determination.
*547 Defendant was represented by counsel on the trial de novo. Counsel repeated defendant's arguments to the effect that the breathalyzer results could not be used because of the failure of the police to help him implement his right to an independent test. Counsel insisted that a .12 reading "may be challenged by the opportunity to have a blood test," and stated:
... I hope that the county prosecutor hasn't missed my point and that is, telling a defendant the significance of the right, so he knows what it means and there's nothing in that record, with this defendant, to indicate that he was told by the State, in implementing the statute, in giving the statute at its plain meaning ... plain language, what should you do, what are your rights and how important are they when you are ... when you take a breath test.
The Law Division judge also found defendant guilty. The judge concluded that defendant "knew that he could see his doctor and talk to his doctor, talk to his attorney and so forth after he had finished the tests ... I think he was aware that he could have this test, but the law does not allow a defendant charged with ... arrested for driving under the influence, to interrupt or make telephone calls, or have an attorney present, before the tests are given." The court further concluded that the State is under no duty to help a defendant to take those independent tests and stated "... it's up to the defendant to proceed and have his own test made."
We conclude that in some circumstances a defendant may successfully challenge the introduction of a breathalyzer examination when, in response to the statutory advice given pursuant to N.J.S.A. 39:4-50.2(c) and (d), he is informed of his right to take an independent examination, and attempts to take advantage of his right, but is not accorded a meaningful opportunity to have an independent test conducted. If defendant did, in fact, request an opportunity to make a telephone call so that he could, through his wife or directly, seek legal or medical advice concerning the conduct of an independent examination, or to arrange for same, defendant should be able to challenge the admission of the breathalyzer examinations. This is especially so where the police did not release defendant after its breathalyzer examination was completed, not because of defendant's *548 intoxicated condition, but apparently because of a policy which permits the release of persons arrested for drunk driving only to the care of another individual.
In State v. Leavitt, 107 N.J. 534 (1987), our Supreme Court held that giving of Miranda warnings and warnings under the "implied consent" law, N.J.S.A. 39:4-50.2, was not inherently confusing, thereby depriving a suspect of the effective assistance of counsel. Among his arguments, Leavitt contended "that the practice of the local police of holding individuals suspected of driving while intoxicated (DWI) for several hours prevented him from obtaining independent scientific tests." 107 N.J. at 537. The Court held that a motorist could not refuse to give a breath sample on the ground that he had not been afforded counsel, and that there was no federal or state constitutional right to counsel in those circumstances. Of significance with respect to this case, Justice O'Hern stated:
Whether a suspect should be permitted to call an attorney before the test is more a matter of timing and practicality than anything else. Our traditions presuppose access to counsel or family by persons in police custody. Many states provide for this by statute or court rule. [Citations omitted].
The problem the police face in the drunk driving setting is that they must administer the necessary blood-alcohol test within a reasonable time after the arrest in order to get an accurate reading. `The evidence is evanescent and may disappear in a few hours.' State v. Dyal, 97 N.J. 229, 239 (1984). Hence, the more accurate assessment of the situation is that because the police must administer the blood-alcohol test promptly, they are unable to afford suspects the opportunity to consult with counsel before they administer the test. [107 N.J. at 541].
In State v. Stever, 107 N.J. 543 (1987), cert. den., ___ U.S. ___, 108 S.Ct. 348, 98 L.Ed.2d 373 (1987), the Supreme Court held that a blood alcohol test could be administered notwithstanding the fact that defendant did not receive Miranda warnings, and that neither the federal nor state constitution prohibited admission into evidence of a defendant's refusal to submit to a breathalyzer exam. The Court in Stever, indicated that its decision was consistent with its holding in Leavitt, supra, "that a defendant has no right, state or federal, to consult with counsel prior to the administration of a breathalyzer test." 107 N.J. at 560. The Court emphasized that "[a] *549 person suspected of driving while intoxicated has no right to refuse to take a breathalyzer test. Consequently, the admission of such refusal at trial impermissively burdens no constitutional right." at 561. Further, in the companion case of State v. Tischio, 107 N.J. 504 (1987), app. dism., ___ U.S. ___, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988), the Court made clear that N.J.S.A. 39:4-50(a) "prescribes an offense that is demonstrated solely by a reliable breathalyzer test administered within a reasonable period of time after defendant is stopped for drunk driving, which test results in the proscribed blood-alcohol level." 107 N.J. at 522. The Court further held that the "offense neither requires nor allows extrapolation evidence to demonstrate the defendant's blood-alcohol level while actually driving," ibid., as N.J.S.A. 39:4-50(a) makes "a .10% blood-alcohol level" at the time of reading, if within a reasonable period after the stop, "a per se offense." 107 N.J. at 516. The Court further found "doubtful" defendant's contention in Tischio that its construction of the statute would encourage "police officers to subject an accused to prolonged detention and repeated testing in the hope that the driver's blood alcohol will ultimately reach the .10% level." Id. at 521.
We agree with defendant that the statutory right to have an independent examination and the obligation of the police to advise defendant of that right would be meaningless if there are no means to implement the statute. As stated by Judge Kuechenmeister in State v. Nicastro, 218 N.J. Super. 231 (Law Div. 1986), where the police department would not assist defendant in any way towards obtaining an independent examination, nor assist him in arranging transportation to a local hospital for that purpose, and where defendant was transported back to his home approximately 20 minutes from the station house:
When it appears from a police officer's testimony that the defendant was thwarted in his attempts to exercise his statutory rights because the police did not have reasonable procedures in place to implement defendant's exercise of those rights, a court may find the police have failed in their obligation to afford *550 defendant reasonable access to an independent test, and therefore evidence obtained by the police must be excluded.
* * * * * * * *
We are convinced that the police authorities must put into operation reasonable guidelines consistent with N.J.S.A. 39:4-50.2(c). Defendants must be given a reasonable opportunity to attempt to secure a reasonable taking of a blood sample as a critical safeguard of evidence that could exonerate the accused, particularly in the unique situation which inheres to the transient state of intoxication.
Likewise, N.J.S.A. 39:4-50 also dictates finding for the defendant. A drunk driving conviction carries severe potential for penalties, including imposition of jail terms, license revocation and fines, mandatory attendance at alcohol educational programs and provisions for the imposition of additional penalties for subsequent offenders. Once a defendant has submitted to the breathalyzer test, he is entitled to a reasonable opportunity to attempt to procure a timely and independent sample of his blood. To refuse him a reasonable opportunity is to deny him the only opportunity he has to defend himself against the charge. [218 N.J. Super. 237-239].
This is particularly true in light of the fact that the breathalyzer examination must be conducted within a reasonable time and extrapolation evidence is not admissible. State v. Tischio, supra.[3]
However, as noted by Justice O'Hern in State v. Leavitt, supra, both timing and practicality must be considered with respect to when a telephone call may be placed, 107 N.J. at 541, and it may well be that even if a telephone call were placed, there would be no hospital, doctor or facility available at the time of day or in the location to conduct an examination. Moreover, before a breathalyzer examination can be suppressed for failure of the police to permit defendant to make a telephone call for the purpose of implementing his statutory right, it should be clear that the defendant's telephone call would have been for that purpose or would have resulted in advice directed to the conduct of an independent examination.
In this case there was no express testimony, at a motion to suppress or otherwise, that defendant wanted to call *551 his wife or an attorney at least in part for the purpose of discussing the possibility that he be given an independent examination, to ask his wife to consult with someone in that regard, or to seek advice on that subject. We will not conclude that the mere refusal to allow defendant to make a telephone call at the time and place in question must require suppression of the breathalyzer results. Rather, as noted, the trial court must determine if such a call was sought for the purpose of arranging or discussing the possibility of such a test and, if it was, whether such an examination could have been conducted in a reasonable period of time so as to produce relevant or probative evidence.[4]
Accordingly, we remand the matter to the Law Division for remand by it to the municipal court for further proceedings consistent with this opinion.[5] On remand defendant may endeavor to show that the breathalyzer results should have been suppressed because he was denied the opportunity to make a telephone call which would have resulted in meaningful communication *552 concerning the conduct of an independent breathalyzer examination. If the breathalyzer test results are suppressed, the trial judge shall decide the case based on the remaining evidence. If they are not suppressed, the judgment of conviction shall stand.
NOTES
[1] See also N.J.S.A. 39:4-50.1, -50.4a.
[2] Defendant pled guilty to a related speeding charge at the same municipal court proceeding. An $85 fine and $15 costs were imposed, but defendant did not appeal that conviction to the Law Division.
[3] We find no problem if defendant is detained because of his condition so long as the police do not preclude defendant's reasonable efforts to have an independent examination conducted.
[4] We believe that both showings, based on the preponderance of believable evidence, must be made by defendant. As noted, Tischio concluded that a reading of .10% or above within a reasonable period of operation constitutes the offense. Moreover, the results of the State's breathalyzer examination would be admissible if defendant is unable to arrange for a reliable independent examination within a reasonable period. Further, we question, in light of Tischio, the relevance of such an independent test except for purposes of challenging the accuracy of the State's test at the time it was given and the credibility of its examiner.

We do not believe that affording defendant the opportunity to make a showing sufficient to permit suppression is inconsistent with State v. Weber, 220 N.J. Super. 420 (App.Div. 1987). While the court in Weber held that the police had no duty to arrange for an independent test and found that defendant knew of his right to have one conducted after he left police custody, the independent examination in Weber which defendant ultimately obtained "validated the police breathalyzer readings." 220 N.J. Super. at 425. Cf. State v. Ettore, 228 N.J. Super. 25 (App.Div. 1988).
[5] These proceedings should be conducted in the municipal court because no seizure of physical evidence in violation of the Constitution is involved. See R. 3:5-7; see also, e.g., State v. Robinson, 224 N.J. Super. 495, 500 (App.Div. 1988); State v. Keegan, 188 N.J. Super. 471, 474 (App.Div. 1983), certif. den. 93 N.J. 320 (1983).