281 N.J. Super. 256 (1995)
657 A.2d 447
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PHILIP DeANGELIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1994.
Decided May 4, 1995.
*257 Before Judges KING, MUIR Jr.[1] and EICHEN.
Justin T. Loughry argued the cause for appellant (Tomar, Simonoff, Adourian & O'Brien, attorneys; Mr. Loughry, on the brief).
James F. Smith, Assistant Prosecutor argued the cause for respondent (Jeffrey S. Blitz, Prosecutor, attorney; Mr. Smith, of counsel, and the brief).
The opinion of the court was delivered by EICHEN, J.S.C. (temporarily assigned).
On February 27, 1992 an Atlantic County grand jury returned a single-count indictment charging defendant with unlawfully and purposefully attaining by deception property in excess of $500 *258 with purpose to deprive the owner thereof, in violation of N.J.S.A. 2C:20-4. In April 1993, defendant was tried and found guilty by a jury. Thereafter, defendant's motion for a judgment of acquittal or a new trial was denied. On May 21, 1993, the judge sentenced defendant to 180 days in the county jail as a condition of a three-year probationary term, a V.C.C.B. penalty of $50, restitution of $3,689, and a fine of $350. After the judge denied bail pending appeal, we granted defendant bail during the pendency of this appeal.
On appeal, defendant raises the following contentions:
POINT I
THE TRIAL COURT ERRED IN PROHIBITING CROSS-EXAMINATION AS TO BIAS OR MOTIVE TO FABRICATE.
POINT II
THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE, OR, IN THE ALTERNATIVE, THERE WAS A VIRTUAL ABSENCE OF PROOF OF ONE ELEMENT OF THE CHARGED CRIME  THE ACTUAL OCCURRENCE OF A THEFT, AND/OR THE AMOUNT OF THE THEFT.
POINT III
TESTIMONY CONCERNING OTHER ALLEGED SHORTAGES, AND MULTIPLE OTHER INSTANCES OF "BAD ACTS" WHOLLY AMBIGUOUS AND NOT SHOWN TO BE ATTRIBUTED TO THE DEFENDANT, VIOLATED EVID.R. 55 AND DENIED THE DEFENDANT A FAIR TRIAL.
POINT IV
THE ADMISSION INTO EVIDENCE OF AN OFFER OF COMPROMISE/SETTLEMENT OF A CLAIM WAS PLAIN ERROR AND DENIED THE DEFENDANT A FAIR TRIAL.
POINT V
THE COURT WRONGLY PRECLUDED DEFENDANT FROM SHOWING THE PROXIMITY IN TIME OF THE THEFT FROM KOOKOOROO BY WITNESS BRUCE HOLZMAN, A WITNESS WHOM THE STATE USED TO CORROBORATE KREGLER'S TESTIMONY; THE COURT'S RULING VIOLATES THE RIGHT OF A DEFENDANT TO INTRODUCE EVIDENCE REGARDING THE GUILT OF ANOTHER, SEE CHAMBERS v. MISSISSIPPI, AND UNFAIRLY LIMITED CROSS-EXAMINATION AS TO BIAS OF HOLZMAN.
POINT VI
THE COURT WRONGLY PREJUDICED THE DEFENSE BY ALLOWING THE STATE TO CALL ADDITIONAL WITNESSES NOT ON THE WITNESS LIST, WELL AFTER TRIAL BEGAN.

*259 POINT VII

THE COURT FAILED TO INSTRUCT THE JURY TO DETERMINE THE VALUE OF THE STOLEN PROPERTY.
POINT VIII
DEFENDANT DID NOT RECEIVE CONSTITUTIONALLY ADEQUATE COUNSEL.
We have carefully reviewed the record and, in light of applicable law, we are satisfied that defendant's contentions are clearly without merit, R. 2:11-3(e)(2); however, we address the contention raised in Point IV because it presents an issue of first impression under Evid.R. 52(1) (now N.J.R.E. 408) (hereinafter cited as Evid.R. 52(1)).

I.
Defendant was employed by the Kookooroo Chicken Restaurant at the Taj Mahal Casino in Atlantic City beginning in December 1991. A month later, he became general manager of the restaurant. As such, he was the only person who had access to the "deposit safe" where the daily restaurant receipts were held pending pick-up and transportation to the bank for deposit by Brinks, Inc., an armored car service. Two months after his promotion to general manager, on March 5, 1992, a deposit shortage of $5,589.69 was reported to Joseph Kregler, director of the restaurant's east coast operations. Kregler's investigation disclosed that the Brinks delivery book had been altered to cover a shortage in that amount. On March 6th, defendant admitted to Kregler he had altered the Brinks book entry but denied taking the money. Kregler then terminated defendant's employment at the restaurant. A day or so later on March 8th, during a telephone conversation between Kregler and defendant, which was overheard by another employee, defendant admitted he had been "floating" restaurant receipts and that he had taken the deposit. Later that day, Kregler and defendant met by pre-arrangement on the boardwalk at which time defendant, in order to avoid criminal prosecution, promised to repay the missing deposit of $5,589.69 plus additional petty cash deficiencies allegedly attributable to him. Kregler testified he told defendant that "[t]he *260 company only wanted the money back. And if he did not return the money, then [the company] would go to the police and file a charge against him." Kregler testified defendant agreed to arrangements whereby the company's treasurer, Morton Wall, would prepare a settlement document and handle the restitution details.
Thus, the record reflects that defendant promised to repay the missing deposit and other funds in return for which Kregler agreed to forebear pursuing criminal prosecution of defendant. In furtherance of their oral agreement, Wall prepared a form of settlement agreement and transmitted it to defendant. As a result of several telephone discussions between March 8th and March 11th, the record reflects defendant successfully negotiated with the treasurer a reduction of the claimed amount from $7,300 to $6,300. Wall then sent the agreement to defendant for his review requesting he sign and return it before March 13th. Defendant did not sign the agreement and instead, on March 17, 1992, went to the Atlantic City Police Department, where he gave a written statement to a detective, admitting he had altered the Brinks' delivery book, but claiming that he had made the admission only as a result of Kregler's having physically threatened him with a knife.
Defendant signed two formal complaints against Kregler, charging him with assault and terroristic threats. Two days later, on March 19, 1992, Kregler, on behalf of the company, signed a theft complaint against defendant. At trial, numerous witnesses for the State testified concerning their observations of defendant and negative view of his work performance, including testimony about defendant's attendance at the casino during work hours and his use and handling of restaurant business receipts as though they were his personal funds.
Following the jury verdict, defendant made a motion for judgment of acquittal or for a new trial on the following grounds: "(1) the verdict was against the weight of the evidence; (2) the court improperly limited the cross-examination of Kregler as to bias; (3) *261 the introduction of [defendant's] offer of compromise was improper under Evid.R. 52; and (4) the court improperly allowed unlisted witnesses to be added to the witness list and to testify, well after the trial had commenced."

II.
Defendant urges us to reverse the conviction because the admission of evidence of his "offer of compromise/settlement" was plain error. Defendant did not object to the admissibility of this evidence at trial. R. 1:7-1; R. 2:10-2. He argues the evidence of the agreement and of the circumstances of his alleged willingness to repay the money is inadmissible under Evid.R. 52(1) because it is not "factually relevant" and its admissibility would undermine the "social policy" favoring non-litigative resolution of controversies. See Wyatt by Caldwell v. Wyatt, 217 N.J. Super. 580, 586, 526 A.2d 719 (App.Div. 1987). He argues that the probative value of the evidence is questionable on the issue of his alleged wrongdoing because a person may offer to pay a claim just to avoid the risk of an adverse judicial outcome. Moreover, he claims admission of an offer of settlement would discourage amicable resolution of such disputes. Id.
In support of his argument, defendant relies on U.S. v. Hays, 872 F.2d 582 (5th Cir.1989), where the Court of Appeals reversed the defendants' convictions for conspiracy, misapplication of funds and false entries in the records of a federally insured savings and loan association, concluding the trial judge had erred in permitting evidence under Fed.R.Evid. 408 regarding a settlement agreement between the defendants and the victim, the savings and loan association. In Hays, the evidence admitted consisted of an executed settlement agreement and excerpts from civil depositions in which the defendants had given their reasons for entering into the agreement. In discussing the rule, the court acknowledged that Fed.R.Evid. 408 "permits evidence of settlement agreements for purposes other than proving liability, such as demonstrating the prejudice of a witness, regulating a contention of undue delay, *262 or establishing the obstruction of a criminal investigation [or prosecution]," but found none of these exceptions applicable to the Hays defendants. Id. at 589; see Fed.R.Evid. 408. For that reason, the court concluded the evidence was inadmissible as it was not offered for any of the "permissible purposes."
Hays is distinguishable from the facts and circumstances of this case because in Hays there was no evidence the defendants had agreed to repay the victim in order to avoid criminal prosecution. Here, defendant's promise to repay the missing funds was in reality an attempt to purchase the victim's silence. We perceive such conduct is more in the nature of an obstruction of justice and, we believe, would have been admissible even by the Hays Court as falling within one of the exceptions to Fed.R.Evid. 408 ("obstructions of criminal investigation or prosecution").
We recognize, of course, that New Jersey's Evidence Rule, Evid.R. 52(1), contains no such express exception. It provides in relevant part as follows:
OFFER TO COMPROMISE AND THE LIKE NOT EVIDENCE OF LIABILITY OR CRIMINAL WRONGDOING
Evidence that a person has, in compromise ... furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claimed to have sustained loss or damage, is inadmissible to prove his liability for the loss or damage or any part of it.
On September 15, 1992, the Supreme Court of New Jersey adopted the New Jersey Rules of Evidence, N.J.R.E. 101 to 1103, which became effective July 1, 1993, after the trial of this case, replacing Evid.R. 1 to 72. In particular, N.J.R.E. 408 replaced Evid.R. 52(1). N.J.R.E. 408 provides in relevant part as follows:
SETTLEMENT OFFERS AND NEGOTIATIONS
When a claim is disputed as to validity or amount, evidence of statements or conduct by parties or their attorneys in settlement negotiations, including offers of compromise, shall not be admissible to prove liability for, or invalidity of, or amount of the claim. Such evidence shall not be excluded when offered for another purpose; and evidence otherwise admissible shall not be excluded merely because it was disclosed during settlement negotiations.
N.J.R.E. 408 generally follows Fed.R.Evid. 408 in that the rule "permits the use of evidence arising out of settlement negotiations *263 for purposes other than proving liability or the amount of damages." Biunno, Current N.J. Rules of Evidence, quoting 1991 Supreme Court Committee Comment on N.J.R.E. 408 (1994). As such, this court has recognized "[e]vidence that a criminal defendant offered consideration for dropping or reducing a charge may also be admitted in appropriate circumstances." Id. (citing State v. Romero, 95 N.J. Super. 482, 489-90, 231 A.2d 830 (App.Div. 1967).
In Romero, we held an offer by a defendant to pay $300 to the victim in exchange for the victim dropping criminal charges against him was an admission by conduct, indicating consciousness of guilt, and admissible against the defendant. Supra, 95 N.J. Super. at 489-91, 231 A.2d 830. This principle has also been recognized by Professor Wigmore:
In a criminal prosecution, the accused's offer to pay money or otherwise to settle the prosecution will be received against him, because that mode of stopping or obstructing the prosecution would be an unlawful act and good policy could not encourage that mode of dealing with a criminal charge.
[4 Wigmore, Evidence, § 1061(8) at 46 (Rev.Ed. 1972).]
Although Romero was not decided under Evid.R. 52(1), commentators have observed that Romero suggests an exception to the usual exclusionary principle embodied by the rule because in criminal cases, the interest of the State is involved and encouragement of out-of-court settlements between an accused and the victim may not be as desirable a "social policy," in contrast to civil matters. See 2 McCormick on Evidence, § 266 at 198 (4th Ed. 1992); Judson F. Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L.Rev. 574, 594 (1956) (cited in Biunno, supra, Comment 2 to R. 52(1)).
Thus, we agree that "the policy of protective offers of compromise in civil cases should not extend to efforts to stifle criminal prosecution by `buying off' the prosecution witness or victim." 2 McCormick, supra, § 266 at 198. We conclude that a policy which encourages informal, negotiated settlements would interfere with the interest of the State in determining the appropriate punishment of criminal conduct. In fact, under the federal rules of *264 evidence, apparently only negotiations between the prosecuting attorney and the accused fall within the protection of the rule excluding evidence of withdrawn guilty pleas. See Fed.R.Evid. 410(4); see also 2 McCormick, supra, § 266 at 199 (citing supporting cases at n. 38). Thus, evidence that a defendant in a criminal case offered to plead guilty in return for leniency during negotiations with the prosecuting attorney is privileged and inadmissible at a criminal trial against him because of the social policy favoring the promotion of plea bargaining as part of the formal administration of criminal justice. Id. at 198.
We hold, under Evid.R. 52(1), evidence that a defendant in a criminal case admitted his guilt and promised to furnish money to the victim in compromise of a claim in order to avoid criminal prosecution is admissible against him to prove his wrongdoing. (This holding applies equally to current N.J.R.E. 408.) We reject defendant's contention that the admission of evidence of defendant's promise to repay the missing restaurant receipts as well as the evidence of the proposed but unexecuted settlement agreement was plain error.
As noted, we also reject defendant's remaining contentions which, neither separately nor in the aggregate, deprived him of a fair trial especially in light of the overwhelming evidence of guilt. The record reflects defendant had ample opportunity to demonstrate Kregler's bias. Although the court ruled the defense could not cross-examine Kregler on the contents of the criminal complaints of assault and terroristic threats filed by defendant, nonetheless, the jury was made fully aware that defendant had accused Kregler of forcing him at knife-point to alter the Brinks delivery book. In fact, the record reflects the only evidence the jury did not hear related to the actual filings of the complaints. Defendant claims the exclusion of this evidence suggested to the jury that these complaints were not credible. The State represents the complaints were later dismissed for lack of cooperation by defendant, which is nowhere disputed in the record. We conclude the exclusion of evidence of the actual filings of the complaints did not *265 have the clear capacity to produce an unjust result under the circumstances. R. 2:10-2.
In addition, there was ample credible evidence in the record to permit the jury to reasonably conclude that money was, in fact, stolen and the amount. Further, the jury was adequately instructed concerning its obligation to find theft of property valued in excess of $500.
We do not agree defendant was prejudiced by the judge allowing the State to call the detective who testified concerning defendant's statement because defendant conceded he had given the statement. Although the detective was not initially listed on the witness list, defendant was aware the detective was a potential witness and knew that the State had probably omitted his name from the list inadvertently. Further, the court gave defendant the opportunity to interview the detective before he testified. We find no reversible error.
We also reject defendant's claim of plain error arising from the admission of evidence of certain alleged "instances of bad acts." The jury was entitled to hear the full circumstances concerning defendant's short tenure as an employee at the Kookooroo Chicken Restaurant consisting, in part, of his co-workers' views of his job performance, including evidence suggestive of a gambling problem, as well as the reasons defendant gave to excuse his alleged criminal conduct. See N.J.R.E. 404b.
Based upon our review of the entire record, to the extent the judge may have committed any error, we consider that error harmless in the absence of "some degree of possibility that [the error] led to an unjust verdict." State v. Benedetto, 120 N.J. 250, 261, 576 A.2d 828 (1990) (quoting State v. Macon, 57 N.J. 325, 335, 273 A.2d 1 (1971)). "That possibility must be `one sufficient to raise a reasonable doubt as to whether the error led the jury to the result it otherwise might not have reached.'" Id. (quoting Macon, supra, at 336, 273 A.2d 1.) We cannot conclude even the possibility of such result here. As for defendant's claim of "inadequate *266 counsel," although a defendant's claim of ineffective assistance of counsel is usually not appropriate on direct appeal, State v. Preciose, 129 N.J. 451, 469, 609 A.2d 1280 (1992), on the record before us, we consider the claim without merit.
Affirmed.
NOTES
[1] Judge Muir did not participate in oral argument; however, with the consent of counsel, he has been joined in the decision.