892 A.2d 751 (2006)
383 N.J. Super. 538
STATE of New Jersey, Plaintiff-Respondent,
v.
Thomas R. HOWARD, Jr., M.D., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 2005.
Decided March 8, 2006.
*753 Richard F. Klineburger, III, Haddonfield, argued the cause for appellant (Klineburger & Nussey, attorneys; Glenn A. Zeitz and Jordan G. Zeitz, on the brief).
John C. Wright, Assistant Salem County Prosecutor, argued the cause for respondent (John T. Lenahan, Salem County Prosecutor, attorney; Mr. Wright, on the brief).
Before Judges LINTNER,[1] PARRILLO and GILROY.
The opinion of the court was delivered by
GILROY, J.S.C. (temporarily assigned).
Defendant, Dr. Thomas R. Howard, Jr., appeals from his conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50(a), after a trial de novo in the Law Division. The primary issue presented on appeal is whether the State is required to prove that a defendant has been advised of his or her right to independent testing pursuant to N.J.S.A. 39:4-50.2(c) and (d) in order to sustain a conviction of a per se violation under N.J.S.A. 39:4-50(a). Because we conclude that the State is not required to present such proofs as an element of the offense, we affirm.
On December 13, 2003, at approximately 2:00 a.m., defendant was operating a motor vehicle eastbound on Hollywood Avenue, Township of Carney's Point.[2] Defendant was proceeding home, having just left the Italian Kitchen Restaurant where he had consumed alcoholic beverages commencing at 10:00 p.m., the evening prior. Following directly behind defendant was an individual operating a red vehicle. Corporal Ogbin, who had been driving a police vehicle in the opposite direction, turned his car around, and followed the two automobiles. While behind the red vehicle, Ogbin observed defendant's car "cross the center line" and "return[] to the proper lane of travel and immediately cross[] the shoulder line, and then turn[] ... and then return[] to the proper lane of travel." In the interim, Patrolman Mangiocco turned onto Hollywood Avenue and followed behind Ogbin's vehicle. While in this position, *754 Mangiocco made observations of defendant's vehicle. "He just kept coming back into the [west] lane and traveling back into the [east] lane into his lane of travel." Corporal Ogbin activated his emergency lights intending to stop the red vehicle. After the red vehicle and Ogbin's vehicle pulled to the shoulder, Mangiocco pulled directly behind defendant and followed him for approximately 100 yards, during which time he observed defendant "swerving." When asked to describe what he meant by "swerving," Mangiocco stated: "[h]e continued to go into the [westbound] lane, bring his vehicle back in his lane of travel, at which time I stopped his vehicle."
Following the stop, Mangiocco observed that defendant had bloodshot eyes and fumbled through a number of receipts that fell to the floor of his car when asked to produce motor vehicle credentials. On making the observations, Mangiocco requested defendant to exit his motor vehicle for the purpose of performing field coordination tests. As defendant stepped out of the vehicle, Mangiocco observed that "he... place[d] his right hand on his vehicle to use for balance to walk to the front of his vehicle to the side of the road." Mangiocco requested defendant to perform two field coordination tests: a heel-to-toe walk, and a one-leg stand. Mangiocco concluded that defendant failed the two tests because he took the wrong number of steps when performing the heel-to-toe test, and kept the "tip of his foot ... touching the ground for balance" when performing the one-leg stand test. After completion of the tests, Mangiocco formed the opinion that defendant was under the influence of alcohol, and arrested him.
At police headquarters, defendant was turned over to Corporal Ogbin who administered two breathalyzer tests at 2:54 a.m. and 3:00 a.m., resulting in .12 blood alcohol concentration (BAC) readings. Defendant was issued a summons for DWI; failure to exhibit a valid insurance card, N.J.S.A. 39:3-29; failure to drive within a single lane, N.J.S.A. 39:4-88b; and reckless driving, N.J.S.A. 39:4-96.
The matter was tried before Judge Krell in the Carney's Point Township municipal court on June 10, 2004. Police Officers Mangiocco and Ogbin testified as to their observations of defendant's motor vehicle on the roadway; Mangiocco testified to his observations of defendant at the time of the stop; and Ogbin testified concerning the two breathalyzer test results. Defendant testified that another person was operating a second vehicle directly behind him on Hollywood Avenue at the time of the stop for the purpose of following defendant to his home; that he observed flashing lights from a police car behind the second vehicle pulling the operator over; that he pulled his vehicle over, in order not to leave the other person; and, that it was at this time when Mangiocco pulled behind defendant. Defendant denies that he was directly pulled over by Mangiocco.
Prior to Ogbin's testimony concerning the administration of the breathalyzer tests, defense counsel, having reviewed the discovery provided by the State, stipulated that: 1) Ogbin was a qualified breathalyzer operator; 2) that the breathalyzer was properly tested before and after the date of the offense, and was in proper working order at the time of the tests; and 3) that the breathalyzer tests were administered properly. Based on the testimony and the stipulation, the judge found that the State had probable cause to arrest defendant for DWI; determined that the State had failed to prove DWI based upon the officers' observations of the operation of defendant's motor vehicle and defendant at time of the stop, but found defendant guilty of DWI based solely upon a per se violation *755 because of the two BAC readings. Because this was defendant's second offense, the judge imposed a sentence of two years suspension of driving privileges; forty-eight hours detention at an approved Intoxicated Driver Resource Center (IDRC); and fines of $505. Other appropriate costs, assessments, penalties and surcharges were also imposed. Those portions of the sentence suspending defendant's driving privileges and directing his detention at an IDRC were stayed, pending appeal.
On appeal de novo to the Law Division, defendant argued the issue of lack of probable cause for Mangiocco to arrest him for DWI, and also raised for the first time at oral argument an issue concerning the validity of Ogbin's breathalyzer operator's certification card. Defendant contended that the card was invalid because one of the two persons whose facsimile signature appears on the card, former Superintendent of State Police Carl Williams, had left his office on February 28, 1999, approximately four months prior to the date that Ogbin was issued the card on June 18, 1999.
On October 15, 2004, after having made independent findings of fact and giving due regard to the municipal judge's opportunity "to judge the credibility of the witnesses," State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964), the judge rejected defendant's argument concerning lack of probable cause for his arrest, and found defendant guilty of DWI based upon the two breathalyzer readings. The judge, however, never made independent findings of fact concerning whether there was sufficient evidence in the record to sustain a conviction for DWI based upon the police officers' observations of defendant's motor vehicle moving upon the highway, and of defendant at the time of the motor vehicle stop.[3] The judge also declined to hear argument concerning the breathalyzer operator's certification card because that issue had not been raised at the municipal court level. The same sentence as below was imposed, and defendant's request for a stay of the sentence was denied.
Defendant retained new counsel, and appeals his conviction arguing:
POINT I.
PRIOR COUNSEL'S FAILURE TO HAVE A DIRECTED VERDICT OF NOT GUILTY BASED ON THE POLICE OFFICER'S FAILURE TO INFORM DR. HOWARD PURSUANT TO N.J.S.A. 39:4-50.2(d) OF HIS STATUTORY RIGHT UNDER N.J.S.A. 39:4-50.2(c) TO HAVE INDEPENDENT "CHEMICAL TESTS OF HIS BREATH, URINE OR BLOOD" CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE BUT FOR COUNSEL'S FAILURE TO MAKE SUCH A MOTION, DR. HOWARD WOULD NOT HAVE BEEN CONVICTED OF A PER SE VIOLATION OF N.J.S.A. 39:4-50(a).
POINT II.
PRIOR COUNSEL'S FAILURE TO INITIALLY RAISE THE ISSUE REGARDING THE VALIDITY OF THE BREATHALYZER OPERATOR'S CERTIFICATION CARD AT THE MUNICIPAL COURT LEVEL AND *756 HIS LATER FAILURE TO PROPERLY RAISE IT AT THE LAW DIVISION LEVEL PURSUANT TO R. 3:23-8(a) CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.
POINT III.
PRIOR COUNSEL'S FAILURE TO MOVE FOR A DIRECTED VERDICT OF NOT GUILTY BASED ON THE STATE'S FAILURE TO ENTER INTO EVIDENCE ANY OF THE ITEMS UNDERLYING THE BREATHALYZER STIPULATION CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.
Claims of ineffective assistance of counsel are governed by the standards set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L. Ed.2d 674, 693 (1984). State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987) (holding the precepts of Strickland and its tests have been adopted by New Jersey). Under Strickland, defendant must show that defense counsel's performance was deficient. Strickland supra, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Additionally, defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Further, because prejudice is not presumed, Fritz, supra, 105 N.J. at 60-61, 519 A.2d 336, defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n. 26, 104 S.Ct. 2039, 2047 n. 26, 80 L.Ed.2d 657, 668 n. 26 (1984). Moreover, such acts or omissions of counsel must amount to more than mere tactical strategy. Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed. 2d at 694-95.
Adequate assistance of counsel is measured by a standard of "`reasonable competence.'" State v. Jack, 144 N.J. 240, 248, 676 A.2d 545 (1996) (quoting Fritz, supra, 105 N.J. at 53, 519 A.2d 336). Therefore, judicial scrutiny requires great deference because the standard does not demand "the best of attorneys," but rather requires attorneys be "[not] so ineffective as to make the idea of a fair trial meaningless." State v. Davis, 116 N.J. 341, 351, 561 A.2d 1082 (1989).
Claims of ineffective assistance of counsel are particularly well-suited to post-conviction relief proceedings because in most instances the claims require development of a record beyond the trial record. State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). In fact, we ordinarily decline to review an ineffective assistance of counsel claim on direct appeal unless the claim can be resolved on the trial record. See State v. DeAngelis, 281 N.J.Super. 256, 265-66, 657 A.2d 447 (App.Div.1995); State v. McBride, 213 N.J.Super. 255, 272, 517 A.2d 152 (App.Div.1986). It is with these principles in mind that we address defendant's arguments.
Defendant argues that prior counsel "should have moved for a directed verdict of not guilty at the conclusion of the trial because the State failed to produce evidence that [defendant] was informed pursuant to N.J.S.A. 39:4-50.2(d)[,] of [his] statutory right under N.J.S.A. 39:4-50.2(c)[,] to have [a person of his own choice conduct] independent `chemical tests of his breath, urine or blood.'" Defendant contends that the State must prove, as an element of a per se violation under N.J.S.A. 39:4-50(a), *757 that defendant was advised of the statutory right to have independent chemical tests of his "breath, urine or blood" after he submitted to the breathalyzer tests, and because the record is devoid of any evidence that he was so advised, the breathalyzer test results should have been excluded from evidence. Defendant asserts that prior counsel's failure to move for a directed verdict "reveals a lack of the essential legal knowledge needed to meet the case of the prosecution[,] is contrary to professional norms[,] and constitutes an unreasonable and deficient performance." Defendant also contends that "there is a reasonable probability that the verdict would have been different absent the breathalyzer test evidence," because neither the municipal court nor the Law Division judge found him guilty based upon observational evidence.
The State counters that it is not required to prove that defendant was advised of the statutory right to obtain independent testing of his "breath, urine or blood" after submitting to the breathalyzer tests in order to establish a per se violation under N.J.S.A. 39:4-50(a). The State further contends that prior counsel, having reviewed discovery in the case, made a tactical decision of attacking the probable cause for the arrest, rather than procedural aspects of the case; and therefore, the first prong of Strickland is not met.
N.J.S.A. 39:4-50.2 (the Implied Consent Law) provides in pertinent part as follows:
(a) Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of [N.J.S.A.] 39:4-50.
. . . .
(c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.
(d) The police officer shall inform the person tested of his rights under subsections (b) and (c) of this section.
We hold that the State is not required to present affirmative proof that a defendant has been advised of the right to independent testing under N.J.S.A. 39:4-50.2(c) and (d) in order to sustain a conviction of a per se violation under N.J.S.A. 39:4-50(a). It is only where a defendant seeks to suppress breathalyzer test results for failure of the State to comply with the statutory provisions concerning a defendant's right to independent testing that the State is required to prove compliance with the statute.
Prosecution for operation of a motor vehicle in violation of N.J.S.A. 39:4-50(a), is quasi-criminal in nature, and as such, the State is obligated to prove each element of the charge beyond reasonable doubt. State v. Dively, 92 N.J. 573, 585, 458 A.2d 502 (1983); State v. Di Carlo, 67 N.J. 321, 327, 338 A.2d 809 (1975); State v. Emery, 27 N.J. 348, 353, 142 A.2d 874 (1958). A violation of N.J.S.A. 39:4-50(a), may be proven "through either of two alternative evidential methods: proof of a defendant's physical condition or proof of a defendant's blood alcohol level." State v. Kashi, 360 N.J.Super. 538, 545, 823 A.2d 883 (App.Div.2003), aff'd, 180 N.J. 45, 848 *758 A.2d 744 (2004). That the Legislature may "require a motor vehicle operator, arrested on probable cause for driving [in violation of N.J.S.A. 39:4-50(a),] to submit to a [breath] test" is beyond challenge. State v. Macuk, 57 N.J. 1, 14, 268 A.2d 1 (1970). An operator, arrested on probable cause in violation of the statute, does not have a "legal right or choice to refuse" a breath test. Id. at 15, 268 A.2d 1. Nor does the admission of breath test results in a prosecution under the DWI statute violate a defendant's constitutional rights. Id. at 13-17, 268 A.2d 1.
A defendant who submits to the taking of a breath sampling retains the statutory right "to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection." N.J.S.A. 39:4-50.2(c). Once a defendant submits to the taking of a breath test, the "police officer shall inform the person tested of his [statutory] rights." N.J.S.A. 39:4-50.2(d) (emphasis added).
N.J.S.A. 39:4-50.2 does not address any "affirmative duties on the part of the police," other than "the need to inform an arrestee of the right to a copy of the test results[,] [Subsection (b),] and that he or she is permitted to have an independent test performed[,] [Subsections (c) and (d)]." State v. Greeley, 178 N.J. 38, 43, 834 A.2d 1016 (2003). Accordingly, issues concerning the statutory right and the obligation of the police to refrain from any actions or omissions that "would render the statutory right meaningless" are addressed on an individual case basis. Ibid.
However, the reported cases do not address the issue presented here: whether the State must offer proof of compliance with that part of the refusal statute requiring the police to advise defendant of the statutory right to independent testing. It was assumed in each of the reported cases, that the defendant had been properly advised of the statutory right. The cases only concerned the obligation of the State to establish a proper police procedure to afford a defendant a meaningful opportunity to have independent tests conducted, and to ensure that the police not interfere with or thwart the defendant's attempt to exercise the right to independent examination. Id. at 43-45, 834 A.2d 1016 (citing State v. Jalkiewicz, 303 N.J.Super. 430, 434, 697 A.2d 155 (App.Div.1997); State v. Ettore, 228 N.J.Super. 25, 28-31, 548 A.2d 1134 (App.Div.1988), certif. denied, 114 N.J. 473, 555 A.2d 600 (1989); State v. Hicks, 228 N.J.Super. 541, 550-51, 550 A.2d 512 (App.Div.1988), certif. denied, 127 N.J. 324, 604 A.2d 599 (1990)). We have accorded defendants who have been thwarted or impeded from exercising the statutory right to independent testing the remedy of moving to suppress the breathalyzer test results. Id. at 44-45, 604 A.2d 599; Jalkiewicz, supra, 303 N.J.Super. at 434, 697 A.2d 155; Hicks, supra, 228 N.J.Super. at 547, 550 A.2d 512. We determine that the same remedy applies when a police officer fails to inform a defendant of his or her statutory right. N.J.S.A. 39:4-50.2(d).
However, the mere absence of evidence in the record that the police complied with N.J.S.A. 39:4-50.2(d), does not give rise to an established fact of non-compliance requiring suppression of otherwise valid breathalyzer tests results. Where a defendant seeks to bar admission of breathalyzer test results because of a police officer's failure to comply with the statute, the defendant is obligated to move to suppress the breathalyzer test results and present evidence of the police officer's non-compliance. This is the burden imposed upon a defendant who seeks to suppress evidence obtained in violation of his Fourth Amendment rights. See Rule 3:5-7, governing motions to suppress in the Law Division, *759 and Rule 7:5-2, for motions to suppress filed in the municipal court. Although the "burden of proof allocation" may shift on the motion, "i.e., on the defendant where the search is made under a warrant and on the State where warrantless," we require in either instance that a defendant file a motion to suppress. Pressler, Current N.J. Court Rules, comments 2 and 3 on R. 3:5-7 (2006); see also State v. Valencia, 93 N.J. 126, 133, 459 A.2d 1149 (1983). Because breathalyzer test results used in prosecuting individuals charged with DWI are obtained from the defendants without a search warrant, motions to suppress such evidence are generally brought in the municipal court. R. 7:5-2(a). Requiring a defendant to follow the same procedure when there is a claim of a violation of a statutory right does not violate due process. Greeley, supra, 178 N.J. at 44-45, 834 A.2d 1016; Jalkiewiez, 303 N.J.Super. at 434, 697 A.2d 155; Hicks, supra, 228 N.J.Super. at 547, 550 A.2d 512.
That defendant should have moved for suppression is especially appropriate in this case where prior to Corporal Ogbin's testimony concerning the administration of the breathalyzer tests, defendant stipulated the fact that the breathalyzer tests were administered properly. It was reasonable for the prosecutor to have assumed that it was not necessary to delve into whether the officer advised defendant of the statutory right to independent testing. The State is not required to prove a negative. Because we conclude that the State was not required to produce affirmative proof of compliance with N.J.S.A. 39:4-50.2(d), we determine that defendant fails to meet the Strickland test on this issue.
Defendant argues next that trial counsel's failure to raise the issue concerning the validity of Corporal's Ogbin's certification card at the municipal court level, and to properly raise it in the Law Division, constitutes ineffective assistance of counsel. Defendant argues that the first prong of Strickland is met because counsel admitted at the trial de novo that he failed to raise the issue at the municipal court level because he only recently became aware of the issue. Defendant argues that the second prong of Strickland is satisfied because failure to raise the issue concerning the certification card materially affected the outcome of defendant's case. Defendant contends that if the card is invalid, "the reliability of the breathalyzer test results are suspect and prior counsel should not have stipulated to those results because without the breathalyzer test results, Dr. Howard would (and could) not have been convicted of a per se violation." We disagree.
Because the parties stipulated Corporal Ogbin's qualifications as a breathalyzer operator, the card was not introduced into evidence. From the description of the certification card, we are satisfied that the card in question is a replica,[4] not the officer's original certification. The original certification is maintained by the Division of State Police. See N.J.A.C. 13:51-1.14. Defendant argues that because the replica produced in discovery was signed by a former Superintendent of State Police who had left office at the time Corporal Ogbin completed his original breathalyzer certification course, the card is invalid and could not have been presented as evidence to establish Ogbin's qualifications to operate the breathalyzer, thereby precluding *760 the admission of the breathalyzer results. Defendant does not challenge Ogbin's completion of his original course certification or of any re-certification courses completed subsequent thereto or that the original operator's certificate on file with the State Police is invalid. Defendant only presents a technical challenge to the replica card.
We dismiss the challenge because we are satisfied that "[o]nly upon completion of this required course of training will the certification and replica be issued." State v. Sohl, 363 N.J.Super. 573, 579, 833 A.2d 1104 (App.Div.2003) (holding that the fact that the officer's initial training course completion date was not set forth on the breath test operator's certification card did not render the card invalid). "[T]he replica which is maintained by the operator is [only] evidence of the operator's qualifications to operate the breathalyzer," Id. at 580, 833 A.2d 1104. That the replica was signed by a former Superintendent of State Police, not holding office at the time that the operator completed his course certification, does not affect the results obtained from tests administered from an otherwise qualified breathalyzer operator. It is at best a technical deficiency which does not require the exclusion of the breathalyzer test results. Id. at 579-80, 833 A.2d 1104. Because Ogbin's replica breathalyzer certification card containing the former Superintendent's signature does not affect his qualifications to operate a breathalyzer, we determine that defendant has not met Strickland.
Lastly, defendant argues that his prior counsel's failure to move for a directed verdict of not guilty based on the State's failure to enter into evidence the documents underlying the breathalyzer stipulation constitutes ineffective assistance of counsel. Defendant contends that notwithstanding his stipulation that the breathalyzer operator was qualified, the breathalyzer was in proper working order before and after the test, and the test was administered properly, the State was still obligated to move into evidence documents underlying the stipulation including the breathalyzer operator's certification card, the pre-and post-testing instrument inspection certificates, and the certificate of analysis of the breath alcohol simulator solution. We considered the argument in light of the record and applicable law, and are satisfied that the argument is without sufficient merit to warrant a discussion herein. R. 2:11-3(e)(2). Although a defendant is not required to concede undisputed facts in a criminal matter, State v. Flynn, 202 N.J.Super. 215, 219 n. 1, 494 A.2d 350 (App.Div.1985), a defendant is free to enter into a stipulation where "there is no bona fide dispute between the parties" concerning a relevant fact. N.J.R.E. 101(a)(4). When a defendant stipulates the facts necessary for the admissibility of breathalyzer test results, the State is not required to introduce the underlying documents. If defendant wanted to qualify his stipulation, defendant should have so stated at the time of trial.
Affirmed.
NOTES
[1] Judge Lintner did not participate in oral argument. However, with the consent of counsel, he has joined in this opinion. R. 2:13-2(b).
[2] Patrolman Mangiocco of the Carney's Point Township Police Department testified that the roadway runs in a northbound/southbound direction, and defendant was operating his vehicle southbound. However, Corporal Ogbin testified that the roadway does not run in a northbound/southbound direction at the area of the motor vehicle stop, but rather in an eastbound/westbound direction, and defendant was traveling eastbound. Because the direction of defendant's motor vehicle is not relevant to the resolution of the issues presented on appeal, we shall refer to the roadway as running in an eastbound/westbound direction throughout the opinion for purpose of consistency.
[3] We have previously recommended municipal court judges, and Law Division judges on trials de novo, "in N.J.S.A. 39:4-50 cases where there are proofs of guilt, with and without breathalyzer readings, [that] the judge[s] should make findings and conclusions on both bases. Failure to do so is unfair to defendants, the State, the attorneys[,] and the Appellate Courts." State v. Sisti, 209 N.J.Super. 148, 151, 506 A.2d 1307 (App.Div.1986); see State v. Nemesh, 228 N.J.Super. 597, 605, 550 A.2d 757 (App.Div. 1988), certif. denied, 114 N.J. 473, 555 A.2d 600 (1989).
[4] A "replica" is defined as "an operator's certificate ... which shall bear the signatures or facsimile signatures of the Attorney General and Superintendent of State Police . . . and which is of a size that permits it to be carried in the pocket, purse, wallet, etc." N.J.A.C. 13:51-1.2.