220 N.J. Super. 420 (1987)
532 A.2d 733
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALFRED B. WEBER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 3, 1987.
Decided June 18, 1987.
*421 Before Judges FURMAN and SHEBELL.
Alfred B. Weber, pro se, submitted a brief and reply brief.
Larry J. McClure, Bergen County Prosecutor, attorney for respondent (Martha E. Dyba, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendant, Alfred B. Weber, appeals his conviction in the Law Division of operating a motor vehicle while under the influence of intoxicating liquor (N.J.S.A. 39:4-50), following a trial de novo on the record. The Law Division imposed the same sentence as previously imposed in the Harrington Park Municipal Court.
At approximately 3:31 a.m. on August 17, 1985 defendant was operating an automobile carrying several passengers when he came upon a DWI check point operation being conducted by the Harrington Park Police. Defendant approached the area and slowed down at the check point but failed to stop at a stop sign that was located near the check point. An officer called to him to stop and he brought his vehicle to a stop approximately 100 feet beyond the stop sign. When questioned, defendant indicated *422 that he did not stop because he did not think the police wanted him to, and he just went through slowly.
The officer speaking with defendant smelled an odor of alcohol on defendant's breath even though defendant was chewing gum. Defendant was asked to exit his vehicle and to perform balance tests which he did with some difficulty in that he swayed when he walked and when he performed the heel-to-toe test. Defendant stated at that time that he had "a couple of drinks, but was not drunk." He appeared argumentative and antagonistic to the officer, but the officer felt that defendant's condition was borderline and indicated that he was inclined to issue defendant a summons for careless driving if someone else would take over the driving. Defendant refused to let anyone else drive, protesting that he was not drunk. The officer indicated to defendant that he thought defendant was under the influence, but he was not trying to ruin defendant's evening by arresting him unless he continued to insist on driving. Defendant was arrested when he again stated that no one else was going to drive his car.
Defendant was placed in a patrol car for the ride to police headquarters for a breathalyzer examination. En route he demanded to have a blood test rather than a breath test. He was advised that he would be administered the breath test first and that he would then be free to have his blood tested. Defendant was first advised of his Miranda warnings while being transported to headquarters. He again demanded a blood test and requested an attorney several times. Defendant agreed to take the breath test after being read the refusal forms twice. The first test was administered at approximately 4:03 a.m. and the second at approximately 4:12 a.m. Both indicated a blood alcohol level of.13%.
Upon his release defendant went to a hospital and attempted to have a blood test performed. He was unable to obtain a blood test as it was hospital policy not to give blood tests in such situations unless requested by the police department. The *423 hospital contacted the police who said they had no need for the blood test. The defendant then went to another hospital and had a blood test performed at approximately 6 a.m. which revealed a blood alcohol level of 102 mg/dl or .102%.
The arresting officer testified it was his opinion that defendant was under the influence of alcohol. This opinion was based upon the officer's observations of defendant's appearance, demeanor and performance on the physical coordination tests, and defendant's driving, including his failure to stop at the check point. A second patrolman who assisted the arresting officer and returned to police headquarters with the two also gave the opinion that defendant was under the influence of alcohol. The Law Division found defendant guilty of violating N.J.S.A. 39:4-50.
Defendant first argues that the police lacked probable cause to arrest him. He points to the arresting officer's testimony that prior to defendant's going through the stop sign the officer did not observe defendant having any inability to handle his car. We first note that apart from the presence of the roadblock the officer had sufficient basis to stop defendant's vehicle because of the stop sign violation. Delaware v. Prouse, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660, 672 (1979). Inasmuch as it was a specific motor vehicle violation which caused defendant to be stopped, we need not consider the validity of the check point except to note that we perceive no obvious failure to comply with the criteria set forth in State v. Kirk, 202 N.J. Super. 28 (App.Div. 1985). We are also satisfied that the police had probable cause to arrest the defendant on suspicion of a violation of N.J.S.A. 39:4-50 considering that defendant had violated the stop sign, had an odor of alcohol on his breath, was unable to adequately perform certain balance tests and demonstrated an inappropriate demeanor and lack of reasonable judgment when requested to have someone else drive. State v. Grant, 196 N.J. Super. 470, 476 (App.Div. 1984).
*424 We find no violation of defendant's Fifth Amendment rights with respect to the use against him of his statement at the scene of the stop that he had a couple of drinks. This information was given at a point when defendant was not in custody and therefore Miranda warnings were not required. Berkemer v. McCarty, 468 U.S. 420, 439-440, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 334-335 (1984).
Defendant alleges a denial of his statutory right to have a blood test for alcohol content taken because the first hospital he visited refused to carry out the test without police orders and the police would not get involved. We find no duty under N.J.S.A. 39:4-50 et seq. for the police authorities to arrange for such tests. Defendant knew he had the right to have the blood test taken and pursued that right and eventually obtained the testing. Further, according to his own sobriety expert's report which he attempted to introduce in evidence, this blood test confirmed the readings the police obtained from the breathalyzer tests.
Defendant maintains that it was an abuse of discretion for the Law Division not to consider the findings of his sobriety expert in rendering its decision. Even if there had been actual expert testimony concerning the contents of the report which the Law Division apparently marked in evidence, it would not constitute a viable defense under State v. Tischio, 208 N.J. Super. 343, 347-348 (App.Div.), certif. granted on reconsideration 105 N.J. 518 (1986). Cf. State v. Knoll, 110 Idaho 678, 718 P.2d 589, 593-594 (Ct.App. 1986) (rejecting defendant's contention that a blood alcohol test result should have been excluded because the state did not offer supplementary evidence to "relate back" the result to the time of the stop). Certainly, in these circumstances, where within one-half hour after arrest defendant's breathalyzer readings were .13% blood alcohol and two and one-half hours after arrest his blood test still showed .10% blood alcohol, defendant cannot be heard to complain that his conviction constitutes an unjust or unreasonable *425 result which is contrary to the legislative intent of N.J.S.A. 39:4-50.
The expert's report which defendant seeks to have the court consider as evidence states that defendant "threw a `temper tantrum' by downing three free poured double shots of 151 proof bourbon. He then got in his vehicle and was stopped as the driver of the vehicle...." This scenario conforms to the hypothesis we postulated in Tischio, 208 N.J. Super. at 347, of the drivers who constitute "moving time bombs" as they proceed down the highway. We confirm our holding in Tischio and note that defendant was unquestionably tested within a reasonable time after his operation of the vehicle and apprehension. See Knoll, 718 P.2d at 595. Indeed his own testing, although undertaken two and one-half hours after his being stopped, nonetheless validated the police breathalyzer readings. We conclude the statute was properly applied by the Law Division.
Affirmed.