228 N.J. Super. 25 (1988)
548 A.2d 1134
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DOLORES J. ETTORE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1988.
Decided June 14, 1988.
*27 Before Judges SHEBELL and GAYNOR.
Michael N. Kouvatas, argued the cause for appellant.
Andrew S. Zeldin, Assistant County Prosecutor, argued the cause for respondent (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; Andrew S. Zeldin, of counsel and on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
Defendant was convicted in the Galloway Township Municipal Court of driving while intoxicated in violation of N.J.S.A. 39:4-50, and as a second offender, was sentenced to a fine of $500, costs of $15, a two-year revocation of her license, a surcharge of $100, thirty days of community service and two days in jail or in-patient I.D.R.C. On appeal to the Law Division and following a trial de novo on the record, defendant was again found guilty of the offense and the same sentence was imposed.
In challenging this conviction, defendant advances the following appellate contentions:
I. DEFENDANT WAS IMPERMISSIBLY THWARTED IN HER ATTEMPT TO EXERCISE HER STATUTORY RIGHT TO AN INDEPENDENT BLOOD TEST AS PROVIDED BY N.J.S.A. 39:4-50.2(c) AND DUE PROCESS OF LAW PURSUANT TO THE N.J. & U.S. CONSTITUTIONS.
II. DEFENDANT'S BREATH TEST RESULTS WERE IMPROPERLY ADMITTED.
III. WITHOUT THE BREATH TEST RESULTS THE OTHER EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION.
IV. THE SUPERIOR COURT, LAW DIVISION, SHOULD HAVE GRANTED DEFENDANT'S MOTION FOR A NEW TRIAL SINCE THERE WAS EVIDENCE, THAT IMPUGNED THE CREDIBILITY OF THE STATE'S KEY WITNESS.
*28 On January 25, 1986 at approximately 5:00 a.m., defendant's vehicle was observed by a State Trooper weaving from the slow to the fast west bound lane of U.S. Route 30 in Galloway Township and at one point crossing over into the east bound lane. The vehicle was stopped and, upon being informed of the reason for the stop, defendant volunteered that she had had three or four glasses of wine at dinner and over the course of the evening. Defendant was asked to exit the vehicle and upon doing so was noted by the trooper to be unsteady on her feet. She needed to lean on the car for support while standing, as well as while walking back to the rear of the car. After failing to properly perform balance tests, defendant was arrested and transported to the Absecon State Police Station where breathalyzer tests were administered. The tests disclosed blood alcohol levels of 0.14% and 0.15%. It was then about 6:00 a.m.
While at the station, defendant repeatedly demanded an independent blood test. Following the completion of the breath tests, defendant telephoned her attorney requesting that he come and take her to where a blood test could be conducted. Being unable to do so, the attorney spoke with the trooper and asked if he (the trooper) could take defendant to a hospital for that purpose. Upon being told that providing such transportation was not permitted, the attorney asked if a taxi could be called. He was told that it was against State Police policy to permit intoxicated persons to leave by taxi unaccompanied by a responsible escort. After phoning her attorney several more times, defendant telephoned her son who picked her up at about 8:30 a.m. and drove her to the West Jersey Hospital. Defendant arrived at the emergency room of the hospital at 9:30 a.m. but was unable to have her blood tested. The hospital records indicate that defendant's request was refused as there was "no medical reason" for the requested testing.
In affirming defendant's conviction entered in the municipal court, Judge Neustadter rejected the argument that defendant *29 was denied her statutory right to obtain an independent blood alcohol test, reasoning:
The police procedures in the case at bar were reasonable. It is unrefuted that defendant was permitted to use the telephone to make whatever arrangements possible for her transportation from the police station and that she was fully aware of her right to an independent test. The trooper testified that, pursuant to their policy, defendant could only be released once an escort responsible for her safety had arrived at the station or when her blood alcohol level had dropped below the legal limit. The attorney whom defendant called that morning testified that the trooper indicated that it was against policy to call a taxicab in this instance and that he was not permitted to take her to a local hospital.
The statute permits defendant to obtain an independent test. It is unreasonable to mandate that the police be required to use their own manpower to afford defendant this right or to allow an intoxicated defendant to leave the station unescorted, where the chance of injury to defendant or others is obviously substantial. The police policy promulgated for implementation of these rights is reasonable and not in contravention of defendant's statutory right to obtain an independent blood test.
In a supplemental letter opinion, the judge noted his disagreement with the holding in State v. Nicastro, 218 N.J. Super. 231 (Law Div. 1986) that the failure of the State Police to have reasonable procedures in place to implement a DWI defendant's exercise of his right to obtain an independent blood analysis, following a breathalyzer test, thwarted defendant's opportunity to obtain vital evidence in his defense and accordingly warranted the suppression of the breathalyzer test results.
Judge Naustadter also concluded that the State's evidence as to the testing of random samples of the ampules used in the operation of the breathalyzer machine was sufficient prima facie proof that the chemicals in any one ampule were of the proper kind and mixed to proper proportion. But, even assuming that the breathalyzer readings were improperly admitted, the judge concluded beyond a reasonable doubt that there was sufficient independent physical evidence of defendant's intoxication to support a conviction.
We are in complete agreement with the reasoning of Judge Neustadter leading to the conclusion there was no basis for suppressing the results of defendant's breath tests either because *30 of the procedures of the State Police with respect to the obtaining of an independent blood alcohol analysis by defendant or the State's evidentiary foundation for the chemical sufficiency of the ampule used in the breathalyzer test administered to defendant.
As noted in State v. Magai, 96 N.J. Super. 109 (Cty.Ct. 1967), in addressing the silence of N.J.S.A. 39:4-50.2 as to any given procedure to be followed in permitting a defendant to obtain an independent blood analysis:
Likewise, defendant's statutorily created rights have not been violated. N.J.S.A. 39:4-50.2 is silent as to any given procedure to be employed in securing an independent analysis of a defendant's blood. The police could, as was done in this case, extend the use of the telephone to a defendant. On the other hand, a defendant could indicate his choice of a physician to the police who, in turn, would make the necessary arrangements. These and other reasonable means could be employed in the absence of any precisely defined procedure in the statute. Where a statute confers certain rights upon a defendant, the police are not thereby denied the authority to establish reasonable regulations in implementation of those rights; they are, perforce, charged with the duty of promulgating reasonable procedures to vouchsafe such rights to a defendant. [96 N.J. Super. at 113]
More recently, in State v. Weber, 220 N.J. Super. 420 (App. Div. 1987), we found that the police authorities were under no statutory duty to arrange for the securing of a blood test by a defendant charged with drunken driving. See also State v. Hudes, 128 N.J. Super. 589, 606 (Cty.Ct. 1974).
Here, as indicated by Judge Neustadter, the police had an established policy governing the release of a defendant arrested for driving while under the influence of alcohol. Until the blood alcohol level of the charged driver fell below the legal limit, he or she could be released only to a responsible escort. According to the policy, the operator of a local taxi did not meet this standard. There is nothing unreasonable or arbitrary about such a policy considering the possible consequences of permitting an intoxicated defendant to proceed unattended by one responsible for his or her safety. Nor does the implementation of such a policy constitute the thwarting of a defendant's attempts to exercise his or her statutory rights to obtain an independent blood test. A policy which allows a defendant to *31 contact by telephone his or her attorney or family member and to be released to such an escort in furtherance of the defendant's exercise of his or her right to arrange for independent testing does, in our view, provide a procedure affording the defendant reasonable access to such testing. In State v. Nicastro, unlike the present case, it was found that the police did not have reasonable procedures in place to implement the driver's exercise of his statutory right to an independent blood test.
Moreover, here the defendant was released to her son in ample time for her to have obtained a blood test which, if satisfactory, would have permitted an attack on the validity of the breathalyzer readings by the extrapolation of the results of the blood test to the time that the breath tests were administered. That the testing was not accomplished because of hospital regulations cannot be attributed to any failure of the authorities with respect to the duty imposed by N.J.S.A. 39:4-50.2. See State v. Hudes, 128 N.J. Super. at 606. Further, there is no reason to believe any greater success would have resulted if efforts to obtain a blood test had been undertaken at an earlier hour.
In contending that the results of her breathalyzer tests were improperly admitted, defendant points to the failure of the State to have produced the private laboratory chemist who had tested the ampule used in the operation of the machine in establishing its accuracy. Thus, the certifications of the police coordinator pertaining to the random testing of the ampules assertedly constituted inadmissible hearsay, thereby undermining the evidentiary foundation as to the reliability of the machine. Moreover, it is claimed that defendant's inability to cross-examine the chemist who had performed the testing infringed upon defendant's right of due process.
Testimony concerning the testing of the breathalyzer disclosed that Trooper Joseph Innocente, the Breath Testing Coordinator, had tested the machine four days prior to the date of the violation as well as approximately three weeks after and found it to be in proper working order on both occasions. Also, *32 that the ampules were randomly tested by an independent lab and that Trooper Innocente as well, had performed tests with a solution. The latter procedure included running the solution through a breathalyzer unit. In the Trooper's words, "I introduce a known solution to that and the proper result comes out then that in effect, is an analysis by use." Each test result established that the ampule batch was prepared properly.
It is settled that the spot checking of a random ampule is sufficient prima facie proof that the chemicals in the test ampule were of the proper kind and mixed to proper proportion. State v. Dickens, 130 N.J. Super. 73, 79 (App.Div. 1974); State v. DeVito, 125 N.J. Super. 478, 479-480 (App.Div. 1973). See also State v. Dohme, 223 N.J. Super. 485, 488 (App.Div. 1988); State v. Hudes, 128 N.J. Super. at 597. As we observed in DeVito:
There is also no merit in the claim that admission into evidence of the results of the breathalyzer test should have been excluded because there was no proper proof that the test control ampule was accurate.
* * * * * * * *
The ampule was sealed; only by breaking it open could a chemist determine that its contents were properly prepared. The trooper who checked the equipment by using a test ampule shortly before and after defendant was tested, found the breathalyzer accurate within tolerable limits. The ampule used by the trooper was a random unit supplied by the same laboratory. This spot check was enough. As was pointed out in State v. Baker, 56 Wash.2d 846, 855, 355 P.2d 806, 811 (Sup.Ct. 1960), the random ampule was sufficient prima facie proof that the chemicals in any one ampule were of the proper kind and mixed to proper proportion. [125 N.J. Super. at 479-480; citations omitted]
Defendant does not now, nor did she at the proceedings below, offer any proof or circumstance suggesting that the instrument malfunctioned because of a defective ampule. Had such proofs been offered the State would have had an opportunity to present evidence in support of the quality of the chemicals in the test ampule. See State v. Dickens, 130 N.J. Super. at 79. The absence of such evidence justified the court's reliance on the prima facie case established by the State's proofs.
As the breathalyzer readings of 0.14% and 0.15% were sufficient proof of defendant's violation of N.J.S.A. 39:4-50, we need not consider defendant's further argument that the physical *33 evidence of her intoxication was inadequate to support a finding of guilt beyond a reasonable doubt. Nevertheless, we are satisfied from our review that such finding could reasonably have been reached on sufficient credible evidence present in the record. State v. Johnson, 42 N.J. 146, 162 (1964).
Defendant's further contention that a new trial should have been ordered because of the evidence allegedly impugning the credibility of the arresting officer is clearly without merit. R. 2:11-3(e)(2). Even assuming that this argument was properly before us, the asserted proofs do not qualify as newly discovered evidence. As the allegations concerning the date on the summons and the erroneous description of defendant's clothing were discoverable by reasonable diligence prior to the trial de novo and were not material to the issue of defendant's intoxicated condition, they could not qualify as newly discovered evidence warranting a new trial. State v. Carter, 85 N.J. 300, 314 (1981). Moreover, such proofs, as well as the hearsay statement concerning prior instances of the use of taxies, were not of the sort that would probably change the court's conclusion if a new trial had been granted. Ibid.
The judgment of conviction is affirmed.