697 A.2d 155

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOSEPH F. JALKIEWICZ, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted. June 11, 1997—Decided July 21, 1997.

Before Judges KING, KEEFE and CONLEY.

*Stephen G. Raymond,* Burlington County Prosecutor, attorney for appellant (*Robert S. Van Gilst,* of counsel and on the brief).

*Sitzler and Sitzler,* attorneys for respondent (*Scott R. McMurtry,* on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

Relying upon the Law Division opinion of *State v. Broadley,* 281 *N.J.Super.* 230, 656 *A.*2d 1319 (Law Div.1992), the Law Division judge in this case determined that defendant's breathalyzer readings were inadmissible in his prosecution for driving while under the influence because the Mt. Laurel Township Police Department

did not have reasonable police procedures in effect to "implement" defendant's right under *N.J.S.A.* 39:4–50.2(c) to have chemical blood tests conducted by a person or physician of his own choosing. We granted the State's leave to appeal and now reverse the judgment under review.

The Law Division judge found, and defendant does not deny, that he was informed of his right to obtain an independent test by the arresting police officer. The Law Division judge also found that defendant heard and understood his right concerning the independent test and "he asked about it." The arresting officer had testified that he did not hear defendant inquire about the independent test. The Law Division judge accepted the police officer's explanation that he "didn't hear it[.]"

It is also undisputed from the record that immediately following the administration of the breathalyzer test, the arresting officer informed defendant that he could either call a relative for transportation, or the officer would call a cab for him, but defendant would not be allowed to drive. At defendant's request, the officer called a cab for defendant and escorted him to the lobby of the police station. When a cab arrived, defendant told the driver to take him home.

According to defendant, his inquiry concerning the independent blood test took place "[a]round the time that [the officer] called for the cab." At that time, defendant simply asked the officer "what's involved" in getting an independent blood test. The officer simply did not respond. Notwithstanding the officer's lack of response, defendant did not press the issue. Defendant admitted that he did not specifically ask for an independent blood test. He also admitted that he understood from prior experience that blood tests could be taken at a hospital emergency room or at a lab.

It is conceded by the State that Mt. Laurel does not have a specific procedure in place concerning a defendant's request for an independent blood test. In *State v. Ettore*, 228 *N.J.Super.* 25, 30, 548 *A.*2d 1134 (App.Div.1988), this court cited with apparent approval *State v. Magai*, 96 *N.J.Super.* 109, 113, 232 *A.*2d 477

(1967), which stated, by way of dicta, that the police are "charged with the duty of promulgating reasonable procedures to vouchsafe such rights to a defendant." [1] Notwithstanding the reference to *State v. Magai,* the *Ettore* court noted that the police have no obligation "to arrange for the securing of a blood test by a defendant charged with drunken driving." *State v. Ettore, supra,* 228 *N.J.Super.* at 30, 548 *A.*2d 1134 (citing *State v. Weber,* 220 *N.J.Super.* 420, 532 *A.*2d 733 (App.Div.) *certif. denied,* 109 *N.J.* 39, 532 *A.*2d 1107 (1987)).

 Our holding in *State v. Ettore* stands for the proposition that "[a] policy that allows a defendant to contact by telephone his or her attorney or family member and to be released to such an escort in furtherance of the defendant's exercise of his or her right to arrange for independent testing does, in our view, provide a procedure affording the defendant reasonable access to such testing." *Id.* at 30–31, 548 *A.*2d 1134. In our view, the arresting officer's summoning of the cab in this case immediately upon completing the breathalyzer tests on defendant, taken in conjunction with his prior advice to defendant concerning the right to an independent test, was all that was necessary to further defendant's exercise of his right.

It is only where the absence of police procedures interfere with defendant's attempt to exercise his statutory right that relief must be given. In *State v. Hicks,* 228 *N.J.Super.* 541, 549–550, 550 *A.*2d 512 (App.Div.1988), we quoted with approval Judge Kuchenmeister's analysis of this issue in *State v. Nicastro,* 218 *N.J.Super.* 231, 237–239, 527 *A.*2d 492 (Law Div.1986). Judge Kuchenmeister there said:

> When it appears from a police officer's testimony that the defendant was thwarted in his attempts to exercise his statutory rights because the police did not have reasonable procedures in place to implement defendant's exercise of those rights, a court may find the police have failed in their obligation to afford defendant

---

[1] The phase "such rights" refers to the right of a defendant under *N.J.S.A.* 39:4–50.2 to secure an independent blood test.

reasonable access to an independent test, and therefore evidence obtained by the police must be excluded.

. . .

Once a defendant has submitted to the breathalyzer test, he is entitled to a reasonable opportunity to attempt to procure a timely and independent sample of his blood. To refuse him a reasonable opportunity is to deny him the only opportunity he has to defend himself against the charge.

[218 *N.J.Super.* at 237–39, 527 A.2d 492].

*Nicastro* stands for the proposition that the absence of reasonable police procedures must have interfered with or "thwarted" the defendant's efforts to exercise his statutory rights.

In *State v. Hicks, supra,* this court said,

[B]efore a breathalyzer examination can be suppressed for failure of the police to permit defendant to make a telephone call for the purpose of implementing his statutory right, it should be clear that the defendant's telephone call would have been for that purpose or would have resulted in advice directed to the conduct of an independent examination.

In this case there was no express testimony, at a motion to suppress or otherwise, that defendant wanted to call his wife or an attorney at least in part for the purpose of discussing the possibility that he be given an independent examination, to ask his wife to consult with someone in that regard, or to seek advice on that subject. We will not conclude that the mere refusal to allow defendant to make a telephone call at the time and place in question must require suppression of the breathalyzer results. Rather, as noted, the trial court must determine if such a call was sought for the purpose of arranging or discussing the possibility of such a test and, if it was, whether such an examination would have been conducted in a reasonable period of time so as to produce relevant or probative evidence.

[228 *N.J.Super.* at 550–551, 550 A.2d 512].

In sum, we are satisfied that *State v. Ettore* and *State v. Hicks* stand for the proposition that a defendant may successfully challenge the introduction of a breathalyzer examination when he is informed of his right to have an independent examination and attempts to take advantage of that right, but is not afforded a meaningful opportunity to have the independent test conducted. That is, it must be shown that the absence of established police procedures has interfered with or thwarted defendant's attempt to exercise the right to an independent examination. As in *Hicks,* there was no indication in this case that defendant, after being

advised of his right to have an independent examination and understanding that right, made any effort to pursue it. Indeed, even if the Mt. Laurel Police Department had a procedure in effect, the most the police would have been required to do would be to afford defendant access to transportation in sufficient time to have him exercise that right. Here, the arresting police officer made transportation available to defendant as soon as possible after completing the breathalyzer examination. That is all the State is required to do.

The judgment under review is reversed and the matter is remanded for further proceedings.