808 A.2d 108

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JOHN P. GREELEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 18, 2002—Decided October 18, 2002.

434

Before Judges PRESSLER, WALLACE, and HOENS.

*John P. Greeley,* appellant *pro se.*

*Michael M. Rubbinaccio,* Morris County Prosecutor, attorney for respondent (*Joseph Connor, Jr.,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

HOENS, J.A.D.

Defendant John P. Greeley was convicted in the Parsippany Municipal Court of driving while intoxicated. The conviction was based on a plea of guilty which was subject to an appeal of the denial of his motion to suppress the results of a breathalyzer test. Following his appeal and trial *de novo* before the Law Division, his suppression motion was again denied and he was again found guilty. Appropriate fines and penalties were imposed. We re-

verse the denial of the suppression motion, vacate the conviction and remand the matter for a new trial.

Greeley was arrested for driving while intoxicated at approximately 4:45 a.m. on October 17, 1998, and was taken immediately to police headquarters in Parsippany. There, he was advised that he was required to submit to breath tests and warned of the consequences if he failed or refused to cooperate. He was also advised of his right to have independent tests conducted and samples taken at his own expense. Thereafter, two breathalyzer tests were conducted and a videotape recording was made of the administration of the tests. Both of those tests produced readings which were over the legal limit and the officer who performed the tests explained those results to Greeley. At that point, Greeley asked the officer twice more to repeat the breath test but each request was refused. He was, however, told again that he had a right to have an independent test performed. At the same time, he was advised that he could not be released from the police station unless a relative or friend came to pick him up, or until the police deemed him sufficiently sober to be declared fit to drive himself. The police permitted him to use the telephone and he made a number of calls but eventually told the officer in charge that he did not know anyone else in the area who he could call. The police then placed him in a holding cell, checking on him every half hour until 9:10 a.m. when he was released from custody.

Greeley filed his motion to suppress the results of the breathalyzer tests in municipal court where an evidentiary hearing was conducted. As a part of the hearing, the municipal court judge reviewed the videotape which showed the procedures relating to the breath tests at the police station and made some limited observations about the contents of the tape on the record. Patrolman Joseph J. Chmura, the officer who administered the breath tests, testified. Greeley did not testify. The motion to suppress was denied, a motion for leave to pursue an interlocutory appeal of the suppression motion was denied and subsequently, Greeley entered a plea of guilty with a reservation that preserved his right

to appeal from the denial of the suppression motion.[1] Solely for reasons relating to the coordination of scheduling, there was a significant passage of time prior to the finalization of the guilty plea.

Greeley timely filed his appeal to the Law Division and appeared for a hearing on the trial *de novo*. By that time, he was proceeding *pro se* and he personally appeared to argue his case. On the first day scheduled for the hearing on the appeal, Greeley made statements on the record that appeared to be at odds with the transcripts of the municipal court proceeding. When he was reminded that the matter was limited to the factual record from the municipal court, he advised the court that all of his statements could be verified by a review of the videotape that the municipal judge had been shown and which had been marked into evidence but the substance of which had not been independently transcribed. It was thereafter discovered that the videotape had not been preserved and was no longer available for the court to review. Because there was no ground on which to conclude that the tape had been intentionally destroyed, the Law Division judge denied Greeley's application for a dismissal of the charges and assumed that the tape would have included the statements that Greeley represented to the court had been made by him concerning the assertion of his right to have an independent test performed. The judge, for reasons expressed on the record, refused to overturn the municipal court's decision on the suppression motion and the guilty verdict was therefore sustained. This appeal followed.

 Greeley first appeals from the decision of the Law Division judge refusing to grant a dismissal of the charges against

---

[1] The practice of pleading guilty with a reservation, while a common one, is entirely unnecessary to preserve the right to appeal from the denial of a suppression motion. Both *Rule* 3:5-7(d) and *Rule* 7:5-2(c)(2) specifically preserve the right to appeal from a denial of a suppression motion after a conviction, whether based on a guilty plea or trial. Therefore, there is no need for a formal reservation of the right to appeal in this context.

him based upon the loss of the videotape. The focus of the court in evaluating whether the loss of evidence amounts to a violation of due process is upon "(1) the bad faith or connivance by the government; (2) whether the evidence was sufficiently material to the defense; and (3) whether the defendant [has been] prejudiced" by the loss of the evidence. *State v. Dreher,* 302 *N.J.Super.* 408, 483, 695 *A.2d* 672 (App.Div.1997), *certif. denied,* 152 *N.J.* 10, 702 *A.2d* 349 (1997), *cert. denied,* 524 *U.S.* 943, 118 *S.Ct.* 2353, 141 *L.Ed.2d* 723 (1998). All parties to this proceeding concede that the loss of the videotape was entirely inadvertent, and no party suggests that the government or the police department intentionally destroyed it or in any way acted in bad faith respecting it. The focus of our inquiry, then, must be upon whether the videotape was material to the defense and whether the defendant has been prejudiced by its loss. Here, the significance of the videotape is limited; its only relevance to this proceeding is to the issue of whether Greeley asked for an opportunity to have an independent test performed and, if he did, the response of the officer to whom that request was made. In light of the fact that the Law Division judge permitted Greeley to state his version of the facts that would have been evident from the tape itself and afforded him all favorable inferences from the information he claimed that the tape would have revealed, the loss of the tape itself is irrelevant and the defendant is not prejudiced. Nothing in the record supports the suggestion that the loss of the tape had any bearing on the adjudication of Greeley's guilt or innocence save for his alleged demand for an opportunity to have an independent blood test performed. As a consequence, refusing to dismiss the charges solely because of the lost tape was entirely appropriate.

■ As a result of the foregoing, the facts are entirely undisputed. Greeley, after being advised by Officer Chmura that he had failed the breathalyzer twice, asked twice more that the test be performed again and was refused. Officer Chmura, however, then *reminded Greeley that he could have an independent test performed.* When Greeley asked how that could be accomplished,

Officer Chmura advised him that he could go to the local hospital or call a doctor to administer the test. Although there is no written or formal policy adopted by the police department, the officer also advised him that he could be released only if a friend or family member came to take custody of him, failing which he would need to remain until he was deemed sufficiently sober to drive. At all times his automobile was impounded and he would not have been able to access it for purposes of transportation had he been released. It had already been determined that he would be released on his own recognizance (ROR) and without the need for posting bail. He was permitted to use a telephone without charge and made three telephone calls trying to find a friend or family member in the general vicinity to come and get him without success. When he explained to Officer Caridi, who was then the officer in charge of him, that he lived in New York, knew no one in the area who could come for him, and again asked how to arrange for the independent test, the officer shrugged, said "oh, well" and left him alone in the area near the telephone. Because he could not think of anyone else to call who would qualify as a friend or relative, and because he had been given no other options, he made no other calls. He was escorted to a cell where he spent the remainder of the night. He was released, nearly five hours after his arrest, at which time he was deemed fit to drive and by which time an independent test would have been pointless.

The right to have an independent blood test or other diagnostic procedure performed following submission to breathalyzer analysis is statutory. *N.J.S.A.* 39:4-50.2(c). That statute, however, apart from mandating that the person charged with the offense be permitted to have the tests performed and mandating that he or she be advised of that right, *N.J.S.A.* 39:50.2(d), provides no guidelines and establishes no uniform statewide regulations for the protection of that right. As a result, we have addressed the issue of the right to independent testing and its protection on a case by case basis. The focus of our analysis, however, has always been upon the question of whether an

absence of procedures or restrictive procedures imposed on the exercise of the statutory right has thwarted the full and fair exercise of the right or otherwise made the right meaningless. As we held in *State v. Hicks,* "the statutory right to have an independent examination ... would be meaningless if there are no means to implement the statute." *State v. Hicks,* 228 *N.J.Super.* 541, 549, 550 *A.*2d 512 (App.Div.1988), *certif. denied,* 127 *N.J.* 324, 604 *A.*2d 599 (1990). There, the absence of a sufficient record precluded a further determination of the question of whether the defendant's request to make a telephone call was an attempt to exercise his right to an independent test or was an effort to interfere with the administration of the breathalyzer itself and resulted in a remand. But in that context, we further noted that an unduly restrictive policy respecting release might equally support a challenge under the statute on the grounds of interfering with the statutory right. *Id.* at 547, 550 *A.*2d 512.

Recently we addressed the statute in the context of a defendant who asked generally about the independent test, was advised that he could be released to a relative or transported by taxi, and who went home in the taxi without attempting to secure the independent test. *State v. Jalkiewicz,* 303 *N.J.Super.* 430, 432, 697 *A.*2d 155 (App.Div.1997). In *Jalkiewicz,* while it was conceded that the local police authority had not adopted specific procedures to protect the right to the test, since the defendant was promptly released from custody and made no effort to secure the test once released, there was no claim that the exercise of the right was thwarted or interfered with. As a result, the absence of a formal procedure was irrelevant. *Id.* at 434–44, 697 *A.*2d 155. In *State v. Ettore,* 228 *N.J.Super.* 25, 548 *A.*2d 1134 (App.Div.1988), *certif. denied,* 114 *N.J.* 473, 555 *A.*2d 600 (1989), we rejected a challenge to a breathalyzer test where the procedure adopted by the police permitted the defendant to be released to a relative or friend for the purpose of attempting to secure the independent test. In *Ettore,* the defendant contacted an attorney who requested that she be transported to the hospital for the test or that a taxi be summoned for her for that purpose, which requests were refused.

The defendant then contacted her son and was released into his custody but was unable to have the test performed because the hospital personnel refused her request. *Id.* at 30–31, 548 *A.*2d 1134. There, the existence of an apparently reasonable established policy, coupled with the fact that the inability to secure the test was unrelated to the policy fixing the terms of her release, supported our holding.

Here, we are confronted with an unwritten policy alleged to be similar to the one we condoned in *Ettore,* namely release to a responsible friend or relative for transportation to a testing site and otherwise retaining defendant in custody pending a police determination of a return to sobriety. Nevertheless, in the circumstances here, that policy, as a practical matter, made the exercise of the statutory right impossible. While we referred to the *Ettore* policy as reasonable in the context of that decision, the reasonableness of the policy was irrelevant because the defendant there was able to secure her prompt release when her son arrived. Consequently, it was not the policy itself that thwarted her from exercising her right to an independent test. *Id.* at 31, 548 *A.*2d 1134. The facts and circumstances of this case, however, compel a different result. Here, Greeley was concededly "begging" for the right to have an independent test. He was permitted to use the telephone but that opportunity was meaningless, given that he had no friends or family members nearby, and no one who could be summoned to arrive promptly enough to have made any independent test meaningful. He reported that fact to a police officer who shrugged and walked away, offering him no other option. Plainly he was sufficiently in control of his faculties to place telephone calls without assistance and to be left unsupervised while he did so. There is thus no basis on which to conclude that had he been given the option, for example, of leaving by taxi, his safety would have been compromised. Nor was there a risk that once released, he would drive away, given that his car had been impounded.

Because the evidence of intoxication diminishes over time, the ability to secure a test quickly is crucial to the validity of the test. *State v. Leavitt,* 107 *N.J.* 534, 541, 527 *A.*2d 403 (1987). It thus becomes entirely arbitrary for the police to insist upon release only to a friend or relative. Ettore's ability to summon her son in compliance with a similar policy was entirely fortuitous, and her inability to secure an independent test, therefore, had nothing to do with the police or their policy on release. Here, however, when the defendant reported to the police that he lived a great distance away and had no friends or family in the area, the police had an obligation to do more than shrug and walk away. We do not imply that the police have any obligation to transport defendants for the tests; plainly they do not. *State v. Weber,* 220 *N.J.Super.* 420, 532 *A.*2d 733 (App.Div.), *certif. denied,* 109 *N.J.* 39, 532 *A.*2d 1107 (1987). Nor do we imply that the rights of out-of-state residents are in any sense greater than the rights of those who reside near the police station. Rather, we hold that when adherence to the policy adopted, in the circumstances, effectively nullifies the exercise of the right by arbitrarily withholding all reasonable means to effectuate it, then the policy impermissibly thwarts the statutory right. Here, the lack of any formal policy coupled with the imposition on this defendant of conditions of release the police knew he could not meet and were not dictated by his actual condition of insobriety itself thwarted his ability to exercise the statutory right he had requested, indeed, had begged for.

For these reasons, the denial of the motion to suppress the evidence of the breathalyzer results is reversed, the guilty plea and sentence are vacated, and the matter is remanded to the municipal court for a trial without the admission of the breathalyzer results.