834 A.2d 1016

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
JOHN P. GREELEY, DEFENDANT–RESPONDENT.

Argued September 22, 2003—Decided November 13, 2003.

*Joseph P. Connor, Jr.*, Assistant Prosecutor, argued the cause for appellant (*Michael M. Rubbinaccio,* Morris County Prosecutor, attorney).

*John P. Greeley,* argued the cause *pro se.*

Justice ZAZZALI delivered the opinion of the Court.

This appeal concerns the right of a defendant, pursuant to *N.J.S.A.* 39:4–50.2(c), to an independent blood-alcohol test after being arrested for driving while intoxicated (DWI). Specifically, we must decide whether the police violate that right by refusing to release, except to the care of a relative or friend, a defendant whose station-house test reveals a blood-alcohol level in excess of the legal limit. In vacating defendant's conviction, the Appellate Division determined that the police, in enforcing that policy, violated defendant's statutory right to an independent test. *State v. Greeley,* 354 *N.J.Super.* 432, 441, 808 *A.2d* 108 (2002). Because we find that neither the policy at issue here nor its administration in the circumstances of this case impermissibly encroached on that statutory right, and because the policy protects the safety of both defendants and the public, we reverse the judgment of the Appellate Division and reinstate defendant's conviction.

I.

In the early morning hours of February 17, 1998, the Parsippany–Troy Hills police apprehended defendant, John P. Greeley, on Route 80. Defendant had attended a party earlier that evening and was on his way back home to Brooklyn. Suspecting defendant to be under the influence of alcohol, the police placed him under arrest and transported him to the police station where two breathalyzer tests were administered. Each test indicated a blood-alcohol concentration (BAC) of 0.12%, in violation of *N.J.S.A.* 39:4–50, which prohibits operation of a motor vehicle by a person with a BAC of "0.10% or more by weight of alcohol in the defendant's blood."

The proceedings at the police station were videotaped, but the tape was lost. Consequently, defendant moved to suppress the breathalyzer results on the grounds of destruction of evidence. The trial court denied the motion; however, in order to prevent prejudice to defendant from the loss of evidence, it accepted his version of the events. The Appellate Division also accepted defendant's version of events and affirmed the trial court's denial of suppression on the grounds of destruction of evidence. *Greeley*, *supra*, 354 *N.J.Super.* at 437, 808 *A.*2d at 111. Because the adjudication of defendant's motion below depended on his version of what occurred at the police station, we likewise will rely on his account of the station-house proceedings.

According to defendant, after being informed that his BAC was in excess of the legal limit, he asked that yet another test be performed. Although the police refused that request, they did inform defendant that he had the right to have an independent test performed at his own expense. They advised him that this test could be performed by a doctor or local hospital, but also told him that he could only be released into the custody of a friend or relative. Otherwise, he had to remain at the station until he was sober enough to drive.

The police provided defendant with access to a telephone from which he made three unsuccessful attempts to reach a friend or relative who might have assisted him. Defendant explained to the police that because he was from out of state, he knew no one in the area who could provide transportation. He asked how else he might be able to arrange for the independent blood-alcohol test. A police officer merely responded, "Oh, well," and provided no other options. Defendant had no one else to call and, thereafter, was escorted to a holding cell. Approximately four hours later, the police deemed defendant sober enough to drive and released him on his own recognizance.

Facing trial in the Parsippany Municipal Court, defendant moved to suppress the breathalyzer results on the ground that the police violated his statutory right to an independent blood-alcohol

test. The court denied his motion and defendant entered a plea of guilty, expressly reserving the right to appeal the denial of his motion to suppress. Defendant then sought a trial *de novo* in the Law Division, where he again moved to suppress the results of the breathalyzer tests. The court denied that motion and found defendant guilty of driving while intoxicated, *N.J.S.A.* 39:4–50. On appeal, the Appellate Division reversed the denial of the motion to suppress, vacated the conviction, and remanded for a new trial. *Greeley, supra,* 354 *N.J.Super.* at 441, 808 *A.*2d at 113–14.

The Appellate Division found the adherence by the police to a policy of releasing DWI arrestees only to a friend or relative to be "entirely arbitrary." *Ibid.* The court reasoned that because defendant's car was impounded and he was sober enough to make phone calls unsupervised, he posed no threat to his own safety or that of third persons. *Id.* at 440, 808 *A.*2d at 113. Consequently, the panel held that the police should have done more to effectuate defendant's statutory right to an independent test than simply present him with the choice of being released to a relative or friend or detention until he was sober enough to drive. *Id.* at 441, 808 *A.*2d at 113.

We granted the State's petition for certification, 175 *N.J.* 430, 815 *A.*2d 477 (2003), to address the issue of whether a police policy of releasing a DWI arrestee only to the custody of a relative or friend violates the statutory right to an independent blood-alcohol test.

## II.

Police administration of blood-alcohol tests is governed by *N.J.S.A.* 39:4–50.2, which provides that, after a chemical breath-test is performed,

(b) A record of the taking of any such sample, disclosing the date and time thereof, as well as the result of any chemical test, shall be made and a copy thereof, upon his request, shall be furnished or made available to the person so tested.

(c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.

(d) The police officer *shall inform the person tested of his rights* under subsections (b) and (c) of this section.

[(Emphasis added).]

Beyond the need to inform an arrestee of the right to a copy of the test results and that he or she is permitted to have an independent test performed, the statute sets forth no other affirmative duties on the part of the police. Nevertheless, in a series of reported opinions, the Appellate Division has instructed that the police may not thwart the right to an independent test through arbitrary actions or policies that otherwise would render the statutory right meaningless.

In *State v. Ettore*, 228 *N.J.Super.* 25, 30, 548 *A.*2d 1134, 1136–37 (App.Div.1988), *certif. denied*, 114 *N.J.* 473, 555 *A.*2d 600 (1989), the court considered a policy that provided that "[u]ntil the blood alcohol level of the charged driver fell below the legal limit, he or she could be released only to a responsible escort." The defendant moved to suppress the test results on the ground that the police had deprived him of his statutory right to an independent test. *Id.* at 27, 548 *A.*2d at 1135. The court, however, concluded that "[t]here is nothing unreasonable or arbitrary about such a policy considering the possible consequences of permitting an intoxicated defendant to proceed unattended by one responsible for his or her safety." *Id.* at 30, 548 *A.*2d at 1137. Accordingly, it refused to suppress the breathalyzer results because the policy afforded the defendant "reasonable access" to an independent test. *Id.* at 31, 548 *A.*2d at 1137.

On another occasion, the Appellate Division elaborated on the notion of reasonable access. *State v. Hicks*, 228 *N.J.Super.* 541, 550 *A.*2d 512 (1988), *certif. denied*, 127 *N.J.* 324, 604 *A.*2d 599 (1990). In *Hicks*, the defendant alleged that the police had refused to allow him to use a telephone to arrange for a private test. *Id.* at 544, 550 *A.*2d at 513. The court explained that "the

statutory right to have an independent examination ... would be meaningless if there are no means to implement the statute." *Id.* at 549, 550 *A.*2d at 516. Consequently, the denial of access to a telephone thwarts the exercise of that right. *Id.* at 550, 550 *A.*2d at 517. However, because the record was not clear as to the purpose for which defendant sought to use the phone—*i.e.*, to call his wife, his lawyer, or his physician—the court remanded without deciding whether suppression was warranted. *Id.* at 551, 550 *A.*2d at 517.

In *State v. Jalkiewicz*, 303 *N.J.Super.* 430, 432, 697 *A.*2d 155, 156 (App.Div.1997), the police informed the defendant of the right to an independent test, but had "no specific procedures in place concerning a defendant's request for an independent blood test." Consequently, the police provided no further information as to how such a test could be obtained, although they summoned a taxi at the defendant's request. *Ibid.* After being released, the defendant simply asked the taxi driver to take him home and did not seek a test. *Ibid.* The defendant contended that the lack of procedures concerning an independent test warranted suppression of the breathalyzer results. *Ibid.* The court, however, determined that the absence of procedures, alone, does not require suppression. *Id.* at 434, 697 *A.*2d at 156–57. Instead, it ruled that a challenge to BAC test results would be upheld only when the inadequacy of police procedures "has interfered with or thwarted defendant's attempt to exercise the right to an independent examination." *Ibid.* That is, the police have no statutory duty to assist in procuring a test; rather, the question is whether the absence of a policy relating to independent BAC tests affirmatively interferes with a defendant's pursuit of such a test. Accordingly, the court found that in summoning a taxi at the defendant's request, the police fulfilled any duty they had. *Id.* at 435, 697 *A.*2d at 157.

■ From the above case law, then, the following principles emerge. A police policy of releasing a DWI arrestee only to a responsible relative or friend is reasonable in light of the risks posed by an intoxicated person to himself and the public. In the

absence of such a policy, so long as a defendant is informed of the right to an independent test, police conduct will warrant suppression of BAC test results only if that conduct affirmatively interferes with or thwarts a defendant's good-faith attempt to obtain an independent test.

## III

### A.

The panel below concluded that the erstwhile reasonable policy of release only to a friend or relative, as approved in *Ettore*, was arbitrary on the facts of this case. *Greeley, supra,* 354 *N.J.Super.* at 441, 808 *A.*2d at 113. The court attempted to distinguish *Ettore* by explaining that the policy of release to a responsible escort was "reasonable in the context of that decision." *Id.* at 440, 808 *A.*2d at 113. In determining the enforcement of the same policy to be unreasonable here, the court found significant that defendant, who was from New York, had no family or friends in the vicinity. *Ibid.* The panel also considered that defendant appeared "sufficiently in control of his faculties to place telephone calls without assistance and to be left unsupervised while he did so." *Ibid.* Accordingly, the court reasoned there was "no basis on which to conclude that had he been given the option, for example, of leaving by taxi, his safety would have been compromised." *Ibid.* That finding, coupled with the fact that "evidence of intoxication diminishes over time," persuaded the Appellate Division to hold that enforcement of the policy of release only to a friend or relative was "entirely arbitrary." *Id.* at 441, 808 *A.*2d at 113. Although the court sought to make clear that out-of-state drivers do not necessarily have greater rights under the statute, it held that, on these facts, the police had a duty to do more than simply offer defendant the choice of detention until sober or release to a responsible escort. *Ibid.* We disagree.

The Appellate Division's determination of what is required to protect an arrestee's statutory right misreads prior case law.

Additionally, its interpretation of the statute is inconsistent with the legislative intent underpinning *N.J.S.A.* 39:4–50.2 when that provision is viewed in the fuller context of the legislative enactments concerning alcohol and public safety. The statute, on its face, only requires police to provide a copy of the test results and to inform defendant of the right to an independent test. As noted, our appellate courts have determined correctly that, lest the statute be devoid of any meaning, the police policy may not arbitrarily deny the exercise of that right. That reading, however, does not answer the question of what policies might be considered reasonable as opposed to those policies that unreasonably thwart the right conferred by the statute. At its root, the answer hinges on the nature of the right that the Legislature sought to bestow on DWI arrestees.

In determining the nature of rights, we cannot consider statutes in a vacuum. *Appeal of N.Y. State Realty & Terminal Co.,* 21 *N.J.* 90, 98, 121 *A.*2d 21, 25 (1956). When ascertaining legislative intent, we can infer that the Legislature was "familiar with its own enactments, with judicial declarations relating to them, and ... passed or *preserved* cognate laws with the intention that they be construed to serve a useful and *consistent* purpose." *State v. Federanko,* 26 *N.J.* 119, 129, 139 *A.*2d 30, 36 (1958) (emphasis added). Those principles require us to look to related legislation to determine the contours of the statutory right to an independent test.

Reading this statute in conjunction with *N.J.S.A.* 59:5–6 (effective Jan. 12, 1990), respecting release by the police of intoxicated persons, compels the conclusion that the Legislature did not intend to confer an absolute right of release upon DWI arrestees. In *N.J.S.A.* 59:5–6, the Legislature made clear that when police officers take custody of an intoxicated driver, they will enjoy immunity from liability only under certain conditions:

Neither a public entity nor a public employee is liable for any injury suffered by a motor vehicle driver upon his voluntary release from police custody *after reasonable precautions have been taken so that the driver is released in a position of relative safety and refuge* following his arrest on a charge of operating a motor

vehicle while under the influence of intoxicating liquor or drugs, pursuant to [*N.J.S.A.*] 39:4–50.

[(Emphasis added).]

It is illogical to conclude that the Legislature was sufficiently concerned with the release of intoxicated motorists to provide immunity from tort liability only when the police release such persons in positions of "relative safety and refuge," but chose to preserve what would amount to an absolute right of an intoxicated DWI arrestee to be released, unescorted. Instead, reading these statutes *in pari materia,* we find that the Legislature has manifested an overarching concern regarding the release of intoxicated persons and has chosen to limit the circumstances in which police properly may release such persons.

Although neither the Appellate Division nor defendant (who argued this appeal *pro se*) raised the issue, we are mindful of the Senate Judiciary Committee Statement that accompanies *N.J.S.A.* 59:5–6. We address its language because it may appear contrary to our analysis of the Legislature's intent. The Statement reads in relevant part:

Police officers *do not have the authority to detain defendants who are charged with driving under the influence,* or their passengers, after the defendant has been processed. *These people must be released upon request. This bill does not change the state of the law. It merely provides immunity from civil liability* for injuries drivers or their passengers sustain following their release from custody.

The committee amendments provide that there will be immunity from liability if the driver or occupant is released from police custody or detention *after reasonable precautions have been taken so that they are released in a position of relative safety and refuge.*

[Senate Judiciary Committee, *Statement to Assembly Bill No. 1461* (Aug. 4, 1988), *reprinted in N.J.S.A.* 59:5–6 (emphasis added).]

Committee statements are useful in interpreting ambiguous language, but in all cases "considered judgment as to the weight to be accorded them must be exercised." *Howard Sav. Inst. v. Kielb,* 38 *N.J.* 186, 195, 183 *A.*2d 401, 406 (1962); *State v. San Vito,* 133 *N.J.Super.* 508, 511, 337 *A.*2d 624, 625 (App.Div. 1975). The comment's explanation that, in order to enjoy full immunity, the police must release arrestees only "after reasonable precautions have been taken" is anchored in the statutory lan-

guage of *N.J.S.A.* 59:5–6. However, the comment's observations that the police "do not have the authority to detain defendants" and that drivers and passengers "must be released upon request" are not rooted in the statute. Moreover, this language is inconsistent with that included elsewhere in the comment and in the statute that requires police officers to undertake reasonable precautions before releasing persons from custody.

Further, the Statement refers to the then-existing "state of the law." At the time this language was promulgated, the Appellate Division had decided *Ettore, supra,* 228 *N.J.Super.* at 25, 548 *A.*2d at 1134. Presuming, as we must, the Legislature's familiarity with judicial declarations relating to its laws, we conclude that the Senate Judiciary Committee understood that police had the authority to detain a still-intoxicated motorist until a responsible escort is procured.

In view of its internal inconsistency and explicit reference to the prevailing state of the law, the Statement cannot be said to evince a legislative intent to contravene the authority of the police to release an intoxicated motorist only to a relative or friend. Understood in full context, the Statement does not detract from the plain language of *N.J.S.A.* 59:5–6, which manifests a clear intention that, to avoid potential liability, the police must release intoxicated motorists only after taking necessary precautions.

We add only that *N.J.S.A.* 40:48–1.3 has recently been amended. *L.* 2003, *c.* 164, § 1. This change empowers municipal governments to pass ordinances allowing the police to detain DWI arrestees until their BAC decreases to .05% or for eight hours, whichever occurs first. *Ibid.* In light of accepted canons of statutory construction, as noted above, it is clear that the Legislature does not intend to preserve the right to an independent BAC test without regard to the dangers posed by the release of still-intoxicated arrestees. Although this recent change does not address the question of legislative intent before its passage, the laws existing at the time of defendant's arrest, read *in pari materia,* compels our conclusion that a policy of releasing an intoxicated DWI

arrestee only to persons responsible for the arrestee's conduct strikes a proper balance between the right to an independent BAC test and the continuing duty of the police to safeguard the public.

In sum, we endorse the approach, originally announced in *Ettore,* that a policy of releasing an intoxicated DWI arrestee only to a responsible friend or relative provides a reasonable opportunity to secure an independent BAC test. Such a policy properly takes into account the dangers such an intoxicated person poses both to himself and to the public. Accordingly, the police need do no more than provide a defendant access to a telephone so that he may arrange for such an escort. If a defendant fails in that attempt, police do not violate a defendant's statutory right by detaining him until he becomes sober enough to no longer present a danger to himself or others.

### B.

We hold that the policy of the Parsippany–Troy Hills Police Department of releasing an intoxicated DWI arrestee only to a friend or relative provided defendant with a reasonable means of exercising the statutory right to an independent BAC test. A policy that is rationally designed to protect inebriated motorists from the risk of harm they present both to themselves and the public will not be considered arbitrary merely because of the happenstance that defendant chose to drink far from home. The police accorded him an opportunity to arrange for a relative or friend to escort him from the station. Accordingly, the police provided defendant reasonable access to an independent test.

The fact that defendant appeared capable of making phone calls unsupervised does not warrant the conclusion that he was fit to be released onto the streets without supervision. Because of the breathalyzer result of .12%, the police knew defendant to be legally intoxicated. Moreover, under *N.J.S.A.* 59:5–6, the police faced potential liability unless they took reasonable precautions to release defendant in a position of relative safety and refuge. In view of those considerations and constraints, the police did not

violate defendant's statutory rights when they refused to release him in his intoxicated condition without proper assurance of adequate supervision. Therefore, because neither the policy nor its application amounted to an arbitrary deprivation of the right to an independent test, we reverse the Appellate Division's judgment suppressing the breathalyzer results and reinstate defendant's conviction.[1]

## IV.

Finally, we consider the manner in which the present issue was preserved for appellate review. With the prosecution's consent, defendant entered a conditional guilty plea, expressly preserving his right to challenge the denial of his motion to suppress the breathalyzer readings. Citing *Rule* 3:5–7(d) and *Rule* 7:5–2, the panel below indicated that this "practice of pleading guilty with a reservation, while a common one, is entirely unnecessary to preserve the right to appeal from the denial of a suppression motion." *Greeley, supra,* 354 *N.J.Super.* at 436 n. 1, 808 *A.*2d at 110 n. 1. That observation is only partly correct.

██ Suppression motions are governed by *Rule* 3:5–7(d) and, in the case of municipal-court proceedings, by *Rule* 7:5–2(c)(2). Each rule provides that a denial of a motion to suppress may be reviewed on appeal irrespective of whether judgment of conviction is entered following trial or following the entry of a guilty plea. *Ibid.* As explained by the Appellate Division on several occasions, however, only motions for suppression *on the grounds of unlawful*

---

[1] The Legislature has explicitly declared that the public policy of this State is "to encourage cooperation among law enforcement officers and to provide for the general supervision of criminal justice by the Attorney General as the chief law enforcement officer of the State in order to secure the benefits of a uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State." *N.J.S.A.* 52:17B–98. We suggest that, pursuant to his authority, the Attorney General, in consultation with appropriate law enforcement officials, adopt guidelines that will ensure the uniform application of policies concerning arrestees' rights under *N.J.S.A.* 39:4–50.2(c).

*search and seizure* automatically survive the entry of a guilty plea. *See, e.g., State v. Robinson,* 224 *N.J.Super.* 495, 500–01, 540 *A.*2d 1313, 1315–16 (1988) (recounting history of Rule 3:5); Pressler, *Current N.J. Court Rules,* comment 5 on *R.* 3:5–7 (2004).

Here, the parties followed the proper procedure in having defendant enter a conditional plea subject to the right to appeal the denial of his motion to suppress. As a consequence, this issue is not critical in the present matter. We note it in passing to prevent any misplaced reliance on the dicta in the decision below.

## V.

For the reasons stated above, we reverse the judgment of the Appellate Division and reinstate defendant's conviction.

*For reversing and reinstating*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, and ALBIN—6.

*Opposed*—None.