**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0668-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LEIA TYGER,

    Defendant-Appellant.

_____

Submitted October 23, 2024 - Decided November 18, 2024

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Municipal Appeal No. 23-05.

The Hernandez Law Firm, PC, attorney for appellant (Steven W. Hernandez, of counsel and on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate attorney, of counsel; Cheryl L. Hammel, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Leia Tyger appeals from the August 31, 2023 order of the Law Division: (1) denying her motion to suppress evidence; and (2) convicting her after a trial de novo of driving while intoxicated (DWI), N.J.S.A. 39:4-50, her second such offense, and reckless driving, N.J.S.A. 39:4-96. We affirm.

I.

The following summarizes the testimony adduced at trial in the municipal court. In the early morning hours of August 20, 2022, Stafford Township patrolman Jackson Bush was on routine patrol in a marked police vehicle. He observed a car on East Bay Avenue stopped at a stop sign for a prolonged time. Bush followed the car, remaining directly behind it as it proceeded west. The officer observed the driver fail to maintain the lane of travel by drifting over the line on the right side of the road several times. After the car made a right turn, Bush initiated a motor vehicle stop.

Bush approached the car on the passenger side. Through the open passenger side window, he saw defendant in the driver's seat, a passenger in the front seat, and another passenger in the back seat. The officer smelled alcohol emanating from the passenger compartment but could not identify which of the occupants was its source. He observed defendant's eyes to be bloodshot.

A-0668-23

Defendant told the officer she had just finished working at a restaurant on nearby Long Beach Island. She denied having consumed alcohol that night. The passenger, however, stated she had been drinking alcohol. At Bush's request, defendant produced her driving credentials with no difficulty.

Bush, who was trained in the detection of alcohol use in drivers and administration of field sobriety tests, directed defendant to exit the vehicle. She complied with no noticeable physical difficulty. The officer conducted a horizontal gaze nystagmus (HGN) test on defendant. After administration of the test, defendant admitted she had one alcoholic cocktail at a local bar. Defendant later stated the reason she drifted over the line was she was texting while driving.

Based on his observations and the HGN test results, the officer determined he had reasonable suspicion defendant was impaired by alcohol. As a result, he administered field sobriety tests to defendant. The officer explained the walk and turn test required defendant to take nine heel-to-toe steps in a straight line with her hands at her side, turn around, and repeat the nine steps in the opposition direction. He demonstrated how to perform the test. Defendant appeared to listen to the officer's instructions but swayed slightly while standing. As defendant performed the test, the officer observed indicators of impairment: defendant did not touch heel to toe on three steps and stopped to steady herself.

3

The officer also administered the one-leg stand test. He instructed defendant to stand with her hands at her side, lift one foot six inches from the ground, and maintain that position while she counted aloud. Bush demonstrated how to perform the test. The officer observed indicators of impairment when defendant performed the test: defendant put her foot down three times and had to steady herself.

A second Stafford Township patrolman, Russell Okinsky, arrived on scene. Bush asked Okinsky to administer a second HGN test because Bush's overhead emergency lights were activated during the first test, which could cause involuntary eye movement. The results of the test Okinsky administered confirmed the results of the HGN test Bush administered.

Based on defendant's admission to consuming alcohol, the officer's observations, and the results of the field sobriety tests, Bush arrested defendant and placed her in the rear of the patrol car. While in the patrol car defendant stated that she was "fucked" and was going to lose her job and custody of her children. She also squirmed around and appeared to attempt to free her hands from her handcuffs. Ultimately, Bush issued summonses to defendant for DWI, reckless driving, and failure to maintain lane, N.J.S.A. 39:4-88.

A-0668-23

The municipal court admitted into evidence video and audio recordings from Bush's body worn camera, his patrol car's dashboard camera, and the camera facing defendant in the rear seat of the patrol car.

At the conclusion of the municipal court trial, defendant moved to suppress all evidence after Bush asked defendant to perform the HGN test. Defendant conceded the dashboard camera recording depicted her drifting over the line on the right side of the lane of travel. Thus, defendant admitted Bush had reasonable and articulable suspicion to conduct a motor vehicle stop. However, she argued that after the traffic stop, Bush did not have reasonable, articulable suspicion to conduct a DWI investigation or ask her to perform field sobriety tests.

Defendant argued that prior to administering the HGN test, the officer did not detect defendant had any difficulty answering questions or retrieving her driving credentials. Defendant noted Bush did not testify he detected the odor of alcohol on her once he isolated defendant from the passengers. Defendant also argued that she did not admit to coming from a bar or consuming alcohol until after Bush administered the HGN test. Finally, defendant argued she offered a reasonable explanation, texting while driving, for drifting out of the

lane of travel. Thus, defendant argued Bush did not have any reason to suspect alcohol impairment prior to his administering the HGN test.

On March 10, 2023, the municipal court denied defendant's motion. The court found the officer's observations of the demeanor of defendant and the passengers, the smell of alcohol from the passenger compartment, the passenger's admission to alcohol consumption, and defendant's failure to maintain the travel lane were sufficient to constitute reasonable articulable suspicion that defendant was impaired prior to administration of the HGN test.

Also on March 10, 2023, the municipal court issued an oral opinion finding defendant guilty of the charged offenses. The court found Bush to have been a credible witness. With respect to the moving violations, the court found defendant drifted out of her lane of travel and crossed the line on the right side of the road "at least four times." This finding was based on Bush's testimony and the court's review of the dashboard recording. As a result, the court found defendant was guilty of failing to maintain the lane of travel.

With respect to the DWI charge, the court found Bush's testimony describing his observations and conversation with defendant credible. The court also found defendant's poor performance on the field sobriety tests was indicative of impairment. The court found there were "three missed steps" that

A-0668-23

were not heel-to-toe during the walk test. Turning to the one-leg stand test, the court found defendant's balance was off on counts six and thirteen and her count went from "nineteen one-thousand" to "ten one-thousand," when she should have said "twenty one-thousand."[1] The court also found defendant's description of her activities prior to the motor vehicle stop changed from denying consumption of alcohol to admitting she had one alcoholic cocktail. The court also found defendant engaged in uncommon behavior in the back seat of the patrol car by "oscillating in an odd manner" and "mumbling" while "speaking to herself" and effectively "appear[ed] to be wrestling to get [her] hands free, to move around."

Based on its findings, the court concluded defendant was operating her car while under the influence of alcohol. The court also found the act of driving while under the influence of alcohol was reckless. Thus, the court convicted defendant of reckless driving.

The court merged the reckless driving conviction into the DWI conviction. Given this was defendant's second DWI conviction, the court imposed a driver's license suspension of one year, along with forty-eight hours in the Intoxicated

---

[1] Bush testified that errors in counting are not established indicators of impairment in the one-leg stand test.

A-0668-23

Driver Resource Center (IDRC), thirty days of community service, and installation of an ignition interlock device for the period of license suspension, plus two years thereafter. For defendant's failure to maintain the lane of travel, the court imposed statutory fines and court costs. The court also imposed court costs for the reckless driving conviction.

The municipal court stayed all aspects of the sentence, except the license suspension and the ignition interlock device requirement, pending defendant's anticipated appeal to the Law Division.

Defendant appealed her convictions of DWI and reckless driving to the Law Division. On March 17, 2023, the Law Division judge stayed defendant's license suspension pending her trial de novo in the Superior Court. State v. Robertson, 228 N.J. 138, 149-50 (2017). The Law Division declined to stay the ignition interlock device requirement.

On August 31, 2023, the Law Division judge issued an oral opinion denying defendant's motion to suppress, and convicting her of DWI and reckless driving. With respect to the motion to suppress the court found:

> the defendant was stopped in the middle of a summer night and at early hours in the morning at approximately 12:20 a.m. coming from a restaurant in a shore town. Upon approaching the motor vehicle[,] the officer smelled an odor of alcohol emanating from inside the car. This court is not aware of any case that

requires the officer to determine that the smell of alcohol emanates specifically from the defendant prior to asking the defendant to exit the vehicle. A passenger in the car admitted having been drinking that night. And this lends itself to the rational inference that the establishment from which the car departed . . . served alcohol.

While the defendant . . . did not admit to having consumed any alcohol at the point of the motor vehicle stop, the officer did observe that the defendant had watery, bloodshot eyes. These facts, coupled with the officer's observations of the car having a prolonged stop and weaving within their lane of travel and crossing the fog line approximately four times prior to the motor vehicle stop, when considered together in a totality of circumstances analysis, gives rise to reasonable and articulable suspicion [that defendant was impaired].

With respect to the DWI charge, the trial court found

[t]he officer's observations coupled with the defendant's performance on these tests, the odor of alcohol emanating from the motor vehicle, the defendant's admission to consumption of alcohol earlier in the night, the occurrence of the stop in the early morning hours in the summer at the shore, the motor vehicle coming from a restaurant where the passenger admitted that at least the passengers had been drinking, the crossing onto the fog line multiple times, the testimony of Officer Bush regarding the defendant's watery[,] bloodshot eyes, and the defendant stating that she is F'd is substantial, credible evidence that proves beyond a reasonable doubt that on August 19, 2022 (sic) that the defendant was in fact operating her motor vehicle while under the influence of intoxicating liquor.

A-0668-23

Accordingly, this court finds that the defendant is guilty
of [DWI] based upon the observational proofs.

The Law Division judge also found defendant guilty of reckless driving based on the evidence establishing defendant operated her car with two passengers after consuming alcohol to the point of exhibiting signs of intoxication, failed to maintain the lane of travel, and texted while driving. The court found beyond a reasonable doubt that defendant operated the car in a reckless manner, endangering herself, her passengers, and the public. An August 31, 2023 judgment memorializes the convictions.

On September 22, 2023, the Law Division judge imposed the same sentence for the DWI conviction as imposed by the municipal court. The Law Division judge imposed court costs for the reckless driving conviction, which was merged into the DWI conviction. On September 22, 2023, the Law Division judge stayed the suspension of defendant's license pending appeal, subject to several conditions.

This appeal follows. Defendant raises the following arguments:

POINT I

GIVEN THE LACK OF EXTRA REASONABLE SUSPICION TO PERFORM FIELD SOBRIETY TESTS AT THE SCENE PURSUANT TO STATE V. BERNOKEITS, THIS COURT SHOULD REVERSE THE LAW DIVISION AND SUPPRESS ALL

10

SUBSEQUENT EVIDENCE OBSERVED AS FRUIT OF THE POISONOUS TREE. THUS, DEFENDANT SHOULD BE ACQUITTED OF THE DWI AND RECKLESS DRIVING CHARGES.

POINT II

THE SUBSTANTIAL CREDIBLE EVIDENCE ON THE RECORD DEMONSTRATES REASONABLE DOUBT AS TO THE INTOXICATION ELEMENT OF DWI. THUS, DEFENDANT'S DWI CONVICTION SHOULD BE REVERSED AND SHE MUST BE ACQUITTED OF DWI AND RECKLESS DRIVING.

POINT III

THE LAW DIVISION ERRED IN FINDING DEFENDANT GUILTY OF RECKLESS DRIVING BEYOND A REASONABLE DOUBT.

II.

A.    Motion to Suppress.

Our review of the denial of a suppression motion is limited. State v. Handy, 206 N.J. 39, 44 (2011). We review a motion judge's factual findings in a suppression hearing with great deference. State v. Gonzales, 227 N.J. 77, 101 (2016). We "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). We defer "to those findings of the trial judge which

11

are substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to the trial court's legal conclusions or interpretation of the legal consequences that flow from established facts. Our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015).

As a threshold matter, a police officer is justified in stopping a vehicle where they suspect the driver committed a motor vehicle violation. State v. Locurto, 157 N.J. 463, 470 (1999) (citing State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)). Thereafter, an officer may require a driver to exit the vehicle upon such a traffic stop. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). "If, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances give rise to" reasonable, articulable suspicion that the motorist is involved in criminal or unlaw activity, the officer may broaden the inquiry of the detention. State v. Bernokeits, 423 N.J. Super. 365, 371 (App. Div. 2011) (quoting State v. Dickey, 152 N.J. 468, 479-80 (1998)) (internal quotations omitted).

To determine whether reasonable suspicion existed, a judge must consider the totality of the circumstances, viewing the "whole picture" rather than taking

each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019) (quoting

State v. Stovall, 170 N.J. 346, 361 (2002)).

> A [judge] must first consider the officer's objective observations. The evidence collected by the officer is "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." "[A] trained police officer draws inferences and makes deductions . . . that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Second, a [judge] must determine whether the evidence "raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing."
>
> [State v. Davis, 104 N.J. 490, 501 (1986) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)) (alterations in original).]

Courts give weight to "the officer's knowledge and experience" as well as "rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise." State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

We have carefully reviewed the record, including the video and audio recordings, and find no basis on which to reverse the Law Division judge's denial of defendant's suppression motion. The Law Division judge provided a thorough and cogent analysis of the facts and circumstances supporting Bush's request that defendant perform the field sobriety tests.

13

On these facts, we agree that the officer had a reasonable, articulable suspicion that defendant was operating her car while under the influence of alcohol prior to administering the HGN test. Although defendant did not admit to consuming alcohol until Bush administered the first HGN test, her passenger admitted consuming alcohol, the odor of alcohol emanated from the passenger compartment, defendant's eyes were bloodshot, and defendant stopped at a stop sign for an extended period of times and failed to maintain a lane of travel by drifting over the line several times. We find no support for defendant's argument that where multiple people occupy a car from which the odor of alcohol is emanating, an officer must isolate the driver and detect the odor of alcohol on the driver's breath before administering field sobriety tests. No one factor is determinative of the reasonable suspicion analysis. Under the totality of the circumstances here, Bush had reasonable, articulable suspicion that defendant was impaired prior to administering the HGN test.

B. <u>DWI Conviction.</u>

On appeal from a municipal court to the Law Division, the review of a conviction is de novo on the record. <u>R.</u> 3:23-8(a)(2). The Law Division judge must make independent findings of fact and conclusions of law but defers to the municipal court's credibility findings. <u>Robertson</u>, 228 N.J. at 147.

We do not, however, independently assess the evidence.  Locurto, 157 N.J. at 471.  "Our standard of review of a de novo verdict after a municipal court trial is to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole."  State v. Ebert, 377 N.J. Super. 1, 8 (App. Div. 2005) (internal quotations marks and citation omitted).  "[A]ppellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'"  State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

The rule of deference is more compelling where, as here, the municipal and Law Division judges made concurrent findings.  Locurto, 157 N.J. at 474.  "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error."  Ibid.  But, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

The State may satisfy its burden of proving a DWI charge "through either of two alternative evidential methods: proof a defendant's physical condition or

A-0668-23

proof of a defendant's blood alcohol level." State v. Howard, 383 N.J. Super. 538, 548 (App. Div. 2006) (quoting State v. Kashi, 360 N.J. Super. 538, 545 (App. Div. 2003), aff'd, 180 N.J. 45 (2004)). Because it lacked proof of defendant's blood alcohol level, the State relied on Bush's testimony concerning defendant's appearance after the traffic stop and the results of the field sobriety tests to satisfy its burden at trial.

A defendant's demeanor, physical appearance, and bloodshot eyes, together with an odor of alcohol or admission of the consumption of alcohol and poor performance on field sobriety tests, as well as other factors, may be sufficient to sustain a DWI conviction. See e.g., State v. Bealor, 187 N.J. 574, 588-89 (2006); accord State v. Federico, 414 N.J. Super. 321, 327 (App. Div. 2010); State v. Liberatore, 293 N.J. Super. 580, 589 (Law Div.), aff'd o.b., 293 N.J. Super. 535 (App. Div. 1996).

Here, the record contains substantial, credible evidence on which the Law Division judge relied for determining beyond a reasonable doubt that defendant operated her car while under the influence of alcohol. That evidence included defendant's reckless driving, changing her story with respect to her consumption of alcohol, admitting to having consumed an alcoholic cocktail before driving the car, the officer detecting the odor of alcohol from the passenger compartment

16

of defendant's car, the time and circumstances of the motor vehicle stop, the passenger admitting she had been drinking alcohol, the indicia of impairment reflected in defendant's performance of the field sobriety tests, and defendant's odd physical movements and statements while in the back of the police car.

C.    Reckless Driving Conviction.

Our review of the record reveals sufficient, credible evidence supporting defendant's conviction of reckless driving. Pursuant to N.J.S.A. 39:4-96, "[a] person who drives a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of reckless driving . . . ." The culpability level of recklessness embedded in N.J.S.A. 39:4-96 requires a conscious disregard of risk. See N.J.S.A. 2C:2-2(b)(3). Intoxication alone or in conjunction with other evidence may satisfy that recklessness element. Ebert, 377 N.J. Super. at 12.

We see no basis on which to reverse defendant's conviction for reckless driving. The record supports the Law Division judge's conclusion beyond a reasonable doubt that defendant endangered herself, her passengers, and the public when she operated her car while under the influence of alcohol,

17

repeatedly drifted out of the lane of travel, and texted while driving. Defendant ignored the risks posed by driving recklessly in her condition.

We have carefully considered defendant's remaining arguments and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed. The stay entered in the Law Division is hereby vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION